Justice BREYERdelivered the opinion of the Court.
In this case, an individual detained in a jail prior to trial brought a claim under Rev. Stat. § 1979, 42 U.S.C. § 1983, against several jail officers, alleging that they used excessive force against him, in violation of the Fourteenth Amendment's Due Process Clause. The officers concede that they intended to use the force that they used. But the parties disagree about whether the force used was excessive.
The question before us is whether, to prove an excessive force claim, a pretrial detainee must show that the officers were subjectivelyaware that their use of force was unreasonable, or only that the officers' use of that force was objectivelyunreasonable. We conclude that the latter standard is the correct one.
I
A
Some but not all of the facts are undisputed: Michael Kingsley, the petitioner, was arrested on a drug charge and detained in a Wisconsin county jail prior to trial. On the evening of May 20, 2010, an officer performing a cell check noticed a piece of paper covering the light fixture above Kingsley's bed. The officer told Kingsley to remove it; Kingsley refused; subsequently other officers told Kingsley to remove the paper; and each time Kingsley refused. The next morning, the jail administrator, Lieutenant Robert Conroy, ordered Kingsley to remove the paper. Kingsley once again refused. Conroy then told Kingsley that officers would remove the paper and that he would be moved to a receiving cell in the interim.
Shortly thereafter, four officers, including respondents Sergeant Stan Hendrickson and Deputy Sheriff Fritz Degner, approached the cell and ordered Kingsley to stand, back up to the door, and keep his hands behind him. When Kingsley refused to comply, the officers handcuffed him, forcibly removed him from the cell, carried him to a receiving cell, and placed him face down on a bunk with his hands handcuffed behind his back.
The parties' views about what happened next differ. The officers testified that Kingsley resisted their efforts to remove his handcuffs. Kingsley testified that he did not resist. All agree that Sergeant Hendrickson placed his knee in Kingsley's back and Kingsley told him in impolite language to get off. Kingsley testified that Hendrickson and Degner then slammed his head into the concrete bunk-an allegation the officers deny.
The parties agree, however, about what happened next: Hendrickson directed Degner to stun Kingsley with a Taser; Degner applied a Taser to Kingsley's back for approximately five seconds; the officers then left the handcuffed Kingsley alone in the receiving cell; and officers returned to the cell 15 minutes later and removed Kingsley's handcuffs.
B
Based on these and related events, Kingsley filed a § 1983complaint in Federal District Court claiming (among other *2471 things) that Hendrickson and Degner used excessive force against him, in violation of the Fourteenth Amendment's Due Process Clause. The officers moved for summary judgment, which the District Court denied, stating that "a reasonable jury could conclude that [the officers] acted with malice and intended to harm [Kingsley] when they used force against him." Kingsley v. Josvai,No. 10-cv-832-bbc (WD Wis., Nov. 16, 2011), App to Pet. for Cert. 66a-67a. Kingsley's excessive force claim accordingly proceeded to trial. At the conclusion of the trial, the District Court instructed the jury as follows:
"Excessive force means force applied recklesslythat is unreasonable in light of the facts and circumstances of the time. Thus, to succeed on his claim of excessive use of force, plaintiff must prove each of the following factors by a preponderance of the evidence:
"(1) Defendants used force on plaintiff;
"(2) Defendants' use of force was unreasonable in light of the facts and circumstances at the time;
"(3) Defendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiff's safety by failing to take reasonable measures to minimize the risk of harm to plaintiff; and
"(4) Defendants' conduct caused some harm to plaintiff.
"In deciding whether one or more defendants used 'unreasonable' force against plaintiff, you must consider whether it was unreasonable from the perspective of a reasonable officer facing the same circumstances that defendants faced. You must make this decision based on what defendants knew at the time of the incident, not based on what you know now.
"Also, in deciding whether one or more defendants used unreasonable force and acted with reckless disregard of plaintiff's rights, you may consider factors such as:
"• The need to use force;
"• The relationship between the need to use force and the amount of force used;
"• The extent of plaintiff's injury;
"• Whether defendants reasonably believed there was a threat to the safety of staff or prisoners; and
"• Any efforts made by defendants to limit the amount of force used." App. 277-278 (emphasis added).
The jury found in the officers' favor.
On appeal, Kingsley argued that the correct standard for judging a pretrial detainee's excessive force claim is objective unreasonableness. And, the jury instruction, he said, did not hew to that standard. A panel of the Court of Appeals disagreed, with one judge dissenting. The majority held that the law required a "subjective inquiry" into the officer's state of mind. There must be " 'an actual intent to violate [the plaintiff's] rights or reckless disregard for his rights.' " 744 F.3d 443, 451 (C.A.7 2014)(quoting Wilson v. Williams,83 F.3d 870, 875 (C.A.7 1996)). The dissent would have used instructions promulgated by the Committee on Pattern Civil Jury Instructions of the Seventh Circuit, which require a pretrial detainee claiming excessive force to show only that the use of force was objectively unreasonable. 744 F.3d, at 455(opinion of Hamilton, J.); see Pattern Civ. Jury Instr. § 7.08 (2009). The dissent further stated that the District Court's use of the word "reckless" in the jury instruction added "an unnecessary and confusing element." 744 F.3d, at 455.
Kingsley filed a petition for certiorari asking us to determine whether the requirements *2472 of a § 1983excessive force claim brought by a pretrial detainee must satisfy the subjective standard or only the objective standard. In light of disagreement among the Circuits, we agreed to do so. Compare, e.g., Murray v. Johnson No. 260,367 Fed.Appx. 196, 198 (C.A.2 2010); Bozeman v. Orum,422 F.3d 1265, 1271 (C.A.11 2005)(per curiam), with Aldini v. Johnson,609 F.3d 858, 865-866 (C.A.6 2010); Young v. Wolfe,478 Fed.Appx. 354, 356 (C.A.9 2012).
II
A
We consider a legally requisite state of mind. In a case like this one, there are, in a sense, two separate state-of-mind questions. The first concerns the defendant's state of mind with respect to his physical acts-i.e.,his state of mind with respect to the bringing about of certain physical consequences in the world. The second question concerns the defendant's state of mind with respect to whether his use of force was "excessive." Here, as to the first question, there is no dispute. As to the second, whether to interpret the defendant's physical acts in the world as involving force that was "excessive," there is a dispute. We conclude with respect to that question that the relevant standard is objective not subjective. Thus, the defendant's state of mind is not a matter that a plaintiff is required to prove.
Consider the series of physical events that take place in the world-a series of events that might consist, for example, of the swing of a fist that hits a face, a push that leads to a fall, or the shot of a Taser that leads to the stunning of its recipient. No one here denies, and we must assume, that, as to the series of events that have taken place in the world, the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind. That is because, as we have stated, "liability for negligentlyinflicted harm is categorically beneath the threshold of constitutional due process." County of Sacramento v. Lewis,523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)(emphasis added). See also Daniels v. Williams,474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property"). Thus, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim. But if the use of force is deliberate-i.e., purposeful or knowing-the pretrial detainee's claim may proceed. In the context of a police pursuit of a suspect the Court noted, though without so holding, that recklessness in some cases might suffice as a standard for imposing liability. See Lewis, supra,at 849, 118 S.Ct. 1708. Whether that standard might suffice for liability in the case of an alleged mistreatment of a pretrial detainee need not be decided here; for the officers do not dispute that they acted purposefully or knowingly with respect to the force they used against Kingsley.
We now consider the question before us here-the defendant's state of mind with respect to the proper interpretation of the force (a series of events in the world) that the defendant deliberately (not accidentally or negligently) used. In deciding whether the force deliberately used is, constitutionally speaking, "excessive," should courts use an objective standard only, or instead a subjective standard that takes into account a defendant's state of mind? It is with respect to this question that we hold that courts must use an *2473 objective standard. In short, we agree with the dissenting appeals court judge, the Seventh Circuit's jury instruction committee, and Kingsley, that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.
A court (judge or jury) cannot apply this standard mechanically. See Lewis, supra,at 850, 118 S.Ct. 1708. Rather, objective reasonableness turns on the "facts and circumstances of each particular case." Graham v. Connor,490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. See ibid. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish,441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. See, e.g.,Graham, supra,at 396, 109 S.Ct. 1865. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.
B
Several considerations have led us to conclude that the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one. For one thing, it is consistent with our precedent. We have said that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham, supra,at 395, n. 10, 109 S.Ct. 1865. And in Bell,we explained that such "punishment" can consist of actions taken with an "expressed intent to punish." 441 U.S., at 538, 99 S.Ct. 1861. But the BellCourt went on to explain that, in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose."Id.,at 561, 99 S.Ct. 1861. The BellCourt applied this latter objective standard to evaluate a variety of prison conditions, including a prison's practice of double-bunking. In doing so, it did not consider the prison officials' subjective beliefs about the policy. Id.,at 541-543, 99 S.Ct. 1861. Rather, the Court examined objective evidence, such as the size of the rooms and available amenities, before concluding that the conditions were reasonably related to the legitimate purpose of holding detainees for trial and did not appear excessive in relation to that purpose. Ibid.
Bell's focus on "punishment" does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated. Rather, as Bellitself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related *2474 to a legitimate governmental objective or that it is excessive in relation to that purpose. Cf. Block v. Rutherford,468 U.S. 576, 585-586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984)(where there was no suggestion that the purpose of jail policy of denying contact visitation was to punish inmates, the Court need only evaluate whether the policy was "reasonably related to legitimate governmental objectives" and whether it appears excessive in relation to that objective); Schall v. Martin,467 U.S. 253, 269-271, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)(similar); see also United States v. Salerno,481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)("[T]he punitive/regulatory distinction turns on'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]' " (quoting Schall, supra,at 269, 104 S.Ct. 2403; emphasis added and some internal quotation marks omitted)). The Court did not suggest in any of these cases, either by its words or its analysis, that its application of Bell's objective standard should involve subjective considerations. Our standard is also consistent with our use of an objective "excessive force" standard where officers apply force to a person who, like Kingsley, has been accused but not convicted of a crime, but who, unlike Kingsley, is free on bail. See Graham, supra.
For another thing, experience suggests that an objective standard is workable. It is consistent with the pattern jury instructions used in several Circuits. We are also told that many facilities, including the facility at issue here, train officers to interact with all detainees as if the officers' conduct is subject to an objective reasonableness standard. See Brief for Petitioner 26; App. 247-248; Brief for Former Corrections Administrators and Experts as Amici Curiae8-18.
Finally, the use of an objective standard adequately protects an officer who acts in good faith. We recognize that "[r]unning a prison is an inordinately difficult undertaking," Turner v. Safley,482 U.S. 78, 84-85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and that "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face," Florence v. Board of Chosen Freeholders of County of Burlington,566 U.S. ----, ----, 132 S.Ct. 1510, 1515, 182 L.Ed.2d 566 (2012). Officers facing disturbances "are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving." Graham,490 U.S., at 397, 109 S.Ct. 1865. For these reasons, we have stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer. We have also explained that a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate. See Part II-A, supra.And we have limited liability for excessive force to situations in which the use of force was the result of an intentional and knowing act (though we leave open the possibility of including a "reckless" act as well). Ibid. Additionally, an officer enjoys qualified immunity and is not liable for excessive force unless he has violated a "clearly established" right, such that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz,533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); see also Brief for United States as Amicus Curiae27-28. It is unlikely (though theoretically possible)
*2475 that a plaintiff could overcome these hurdles where an officer acted in good faith.
C
Respondents believe that the relevant legal standard should be subjective, i.e.,that the plaintiff must prove that the use of force was not "applied in a good-faith effort to maintain or restore discipline" but, rather, was applied "maliciously and sadistically to cause harm." Brief for Respondents 27. And they refer to several cases that they believe support their position. See id.,at 26-31 (citing Whitley v. Albers,475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); Hudson v. McMillian,503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lewis,523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043; Johnson v. Glick,481 F.2d 1028 (C.A.2 1973)).
The first two of these cases, however, concern excessive force claims brought by convicted prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause, not claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause. Whitley, supra,at 320, 106 S.Ct. 1078; Hudson, supra,at 6-7, 112 S.Ct. 995. The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less "maliciously and sadistically." Ingraham v. Wright,430 U.S. 651, 671-672, n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); Graham, supra,at 395, n. 10, 109 S.Ct. 1865 (1989); see also 4 W. Blackstone, Commentaries *300 ("[I]f the offence be not bailable, or the party cannot find bail, he is to be committed to the county [jail] ... [b]ut ... only for safe custody, and not for punishment"). Thus, there is no need here, as there might be in an Eighth Amendment case, to determine when punishment is unconstitutional. Whitleyand Hudsonare relevant here only insofar as they address the practical importance of taking into account the legitimate safety-related concerns of those who run jails. And, as explained above, we believe we have done so.
Lewisdoes not prove respondents' point, either. There, the Court considered a claim that a police officer had violated due process by causing a death during a high-speed automobile chase aimed at apprehending a suspect. We wrote that "[j]ust as a purpose to cause harm is needed for Eighth Amendment liability in a [prison] riot case, so it ought to be needed for due process liability in a pursuit case." 523 U.S., at 854, 118 S.Ct. 1708. Respondents contend that this statement shows that the Court embraced a standard for due process claims that requires a showing of subjective intent. Brief for Respondents 30-31. Other portions of the Lewisopinion make clear, however, that this statement referred to the defendant's intent to commit the acts in question, not to whether the force intentionally used was "excessive." 523 U.S., at 854, and n. 13, 118 S.Ct. 1708. As explained above, the parties here do not dispute that respondents' use of force was intentional. See Part II-A, supra.
Nor does Glickprovide respondents with significant support. In that case Judge Friendly, writing for the Second Circuit, considered an excessive force claim brought by a pretrial detainee under the Fourteenth Amendment's Due Process Clause. Judge Friendly pointed out that the "management by a few guards of large numbers of prisoners" in an institution "may require and justify the occasional use of a degree of intentional force." 481 F.2d, at 1033. He added that, in determining whether that intentional use of force "crosse[s]" the "constitutional line," a court should look:
*2476 "to such factors as [ (1) ] the need for the application of force, [ (2) ] the relationship between the need and the amount of force that was used, [ (3) ] the extent of injury inflicted, and [ (4) ] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Ibid.
This statement does not suggest that the fourth factor (malicious and sadistic purpose to cause harm) is a necessarycondition for liability. To the contrary, the words "such ... as" make clear that the four factors provide examples of some considerations, among others, that might help show that the use of force was excessive.
Respondents believe these cases nonetheless help them make a broader point-namely, that a subjective standard "protects against a relative flood of claims," many of them perhaps unfounded, brought by pretrial detainees. Brief for Respondents 38. But we note that the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e, which is designed to deter the filing of frivolous litigation against prison officials, applies to both pretrial detainees and convicted prisoners. Nor is there evidence of a rash of unfounded filings in Circuits that use an objective standard.
We acknowledge that our view that an objective standard is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment may raise questions about the use of a subjective standard in the context of excessive force claims brought by convicted prisoners. We are not confronted with such a claim, however, so we need not address that issue today.
III
We now consider the lawfulness of the jury instruction given in this case in light of our adoption of an objective standard for pretrial detainees' excessive force claims. See Part II-A, supra. That jury instruction defined "excessive force" as "force applied recklessly that is unreasonable in light of the facts and circumstances of the time." App. 277. It required Kingsley to show that the officers "recklessly disregarded [Kingsley's] safety." Id.,at 278. And it suggested that Kingsley must show the defendants "acted with reckless disregard of [Kingsley's] rights," while telling the jury that it could consider several objective factors in making this determination. Ibid.
Kingsley argues that the jury instruction is faulty because the word "reckless" suggests a need to prove that respondents acted with a certain subjective state of mind with respect to the excessive or nonexcessive nature of the force used, contrary to what we have just held. Reply Brief 20-22. Respondents argue that irrespective of our holding, any error in the instruction was harmless. Brief for Respondents 57-58. And the Solicitor General suggests that, because the instructions defined "recklessness" with reference to objective factors, those instructions effectively embody our objective standard and did not confuse the jury. Brief for United States as Amicus Curiae28-32.
We agree with Kingsley that the instructions were erroneous. "[R]eckles[s] disregar[d] [of Kingsley's] safety" was listed as an additional requirement, beyond the need to find that "[respondents'] use of force was unreasonable in light of the facts and circumstances at the time." App. 278. See also ibid.(Kingsley had to show respondents "used unreasonable force andacted with reckless disregard of [Kingsley's] rights" (emphasis added)). And in determining whether respondents "acted with reckless disregard of [Kingsley's] rights," the jury was instructed to "consider *2477 ... [w]hether [respondents] reasonably believedthere was a threat to the safety of staff or prisoners." Ibid.(emphasis added). Together, these features suggested the jury should weigh respondents' subjective reasons for using force and subjective views about the excessiveness of the force. As we have just held, that was error. But because the question whether that error was harmless may depend in part on the detailed specifics of this case, we leave that question for the Court of Appeals to resolve in the first instance.
The decision of the Court of Appeals is vacated, and the case is remanded for proceedings consistent with this opinion.
It is so ordered.
Justice SCALIA, with whom THE CHIEF JUSTICE and Justice THOMAS join, dissenting.
The Constitution contains no freestanding prohibition of excessive force. There are, however, four constitutional provisions that we have said forbid the use of excessive force in certain circumstances. The Fourth Amendment prohibits it when it makes a search or seizure "unreasonable." The Eighth Amendment prohibits it when it constitutes "cruel and unusual" punishment. The Fifth and Fourteenth Amendments prohibit it (or, for that matter, any use of force) when it is used to "deprive" someone of "life, liberty, or property, without due process of law."
This is a Fourteenth Amendment case. The Fifth Amendment applies only to federal actors; Kingsley forfeited any argument under the Fourth Amendment by failing to raise it below; and he acknowledges that the Eighth Amendment standard is inapplicable, Brief for Petitioner 27, n. 8. The only question before us is whether a pretrial detainee's due process rights are violated when "the force purposely or knowingly used against him [is] objectively unreasonable." Ante, at 2473. In my view, the answer is no. Our cases hold that the intentional infliction of punishment upon a pretrial detainee may violate the Fourteenth Amendment; but the infliction of "objectively unreasonable" force, without more, is not the intentional infliction of punishment.
In Bell v. Wolfish,441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), we held that the Due Process Clause forbids holding pretrial detainees in conditions that "amount to punishment." Id.,at 535, 99 S.Ct. 1861. Conditions amount to punishment, we explained, when they are "imposed for the purpose of punishment." Id.,at 538, 99 S.Ct. 1861. Acting with the intent to punish means taking a " 'deliberate act intended to chastise or deter.' " Wilson v. Seiter,501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)(quoting Duckworth v. Franzen,780 F.2d 645, 652 (C.A.7 1985)); see also Bell, supra,at 537-538, 99 S.Ct. 1861. The Court in Bellrecognized that intent to punish need not be "expressed," 441 U.S. at 538, 99 S.Ct. 1861, but may be established with circumstantial evidence. More specifically, if the condition of confinement being challenged "is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment." Id.,at 539, 99 S.Ct. 1861. We endorsed the same inference when we applied Bell's intent-to-punish test in challenges brought by pretrial detainees against jailhouse security policies, id.,at 560-562, 99 S.Ct. 1861; Block v. Rutherford,468 U.S. 576, 583-584, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), and statutes permitting pretrial detention, Schall v. Martin,467 U.S. 253, 255, 269, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); United States v. Salerno,481 U.S. 739, 741, 746-747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).
*2478 In light of these cases, I agree with the Court that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor,490 U.S. 386, 395, n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(citing Bell, supra,at 535-539, 99 S.Ct. 1861). I disagree, however, that any intentional application of force that is objectively unreasonable in degree is a use of excessive force that "amount[s] to punishment." Bell,441 U.S., at 535, 99 S.Ct. 1861. The Court reaches that conclusion by misreading Bellas forbidding States to take any harmful action against pretrial detainees that is not "reasonably related to a legitimate goal." Id., at 539, 99 S.Ct. 1861.
Bellendorsed this "reasonable relation" inference in the context of a challenge to conditions of a confinement-specifically, challenges to the State's policy of housing two people in each cell, id.,at 528, 99 S.Ct. 1861and various security policies, id.,at 548-549, 553, 555, 558, 560-562, 99 S.Ct. 1861. The conditions in which pretrial detainees are held, and the security policies to which they are subject, are the result of considered deliberation by the authority imposing the detention. If those conditions and policies lack any reasonable relationship to a legitimate, nonpunitive goal, it is logical to infer a punitive intent. And the same logic supports finding a punitive intent in statutes authorizing detention that lacks any reasonable relationship to a valid government interest. Schall, supra,at 269, 104 S.Ct. 2403; Salerno, supra,at 746-747, 107 S.Ct. 2095.
It is illogical,however, automatically to infer punitive intent from the fact that a prison guard used more force against a pretrial detainee than was necessary. That could easily have been the result of a misjudgment about the degree of force required to maintain order or protect other inmates, rather than the product of an intent to punish the detainee for his charged crime (or for any other behavior). An officer's decision regarding how much force to use is made "in haste, under pressure, and frequently without the luxury of a second chance," Hudson v. McMillian,503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)(internal quotation marks omitted), not after the considered thought that precedes detention-policy determinations like those at issue in Bell,Block,Schall,and Salerno. That an officer used more force than necessary might be evidencethat he acted with intent to punish, but it is no more than that.
In sum: Bellmakes intent to punish the focus of its due-process analysis. Objective reasonableness of the force used is nothing more than a heuristic for identifying this intent. That heuristic makes good sense for considered decisions by the detaining authority, but is much weaker in the context of excessive-force claims. Kingsley does not argue that respondents actually intended to punish him, and his reliance on Bellto infer such an intent is misplaced.
Kingsley claims that "the protections of due process ... extend beyond the narrow context of 'punishment.' " Brief for Petitioner 15. Unquestionably. A State would plainly violate the Due Process Clause if it extended a detainee's confinement because it believed him mentally ill (not as "punishment"), without giving him the constitutionally guaranteed processes that must precede the deprivation of liberty. But Kingsley does not claim deprivation of liberty in that normal sense of that word-the right to walk about free. He claims that the Due Process Clause confers, on pretrial detainees, a substantive "liberty" interest that consists of freedom from objectively unreasonable force. Kingsley seeks relief, in other words, under *2479 the doctrine of "substantive due process," through which we have occasionally recognized "liberty" interests other than freedom from incarceration or detention, that "cannot be limited at all, except by provisions that are 'narrowly tailored to serve a compelling state interest.' " Kerry v. Din, --- U.S. ----, ----, 135 S.Ct. 2128, 2133, --- L.Ed.2d ---- (2015)(plurality opinion) (quoting Reno v. Flores,507 U.S. 292, 301-302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)).
Even if one believed that the right to process can confer the right to substance in particular cases, Kingsley's interest is not one of the "fundamental liberty interests" that substantive due process protects. We have said that that doctrine protects only those liberty interests that, carefully described, are "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Washington v. Glucksberg,521 U.S. 702, 720-721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)(citations and internal quotation marks omitted). Carefully described, the liberty interest Kingsley asserts is the right of pretrial detainees to be free from the application of force that is more than is objectively required to further some legitimate, nonpunitive, governmental interest. He does not argue (nor could he) that this asserted interest could pass the test announced in Glucksberg.
I conclude by emphasizing that our Constitution is not the only source of American law. There is an immense body of state statutory and common law under which individuals abused by state officials can seek relief. Kingsley himself, in addition to suing respondents for excessive force under 42 U.S.C. § 1983, brought a state-law claim for assault and battery. 744 F.3d 443, 446, n. 6 (C.A.7 2014). The Due Process Clause is not "a font of tort law to be superimposed upon" that state system. Daniels v. Williams,474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)(quoting Paul v. Davis,424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). Today's majority overlooks this in its tender-hearted desire to tortify the Fourteenth Amendment.