[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12331
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cv-01139-GKS-KRS

THOMAS MCCRODEN,

Plaintiff-Appellant,

versus

COUNTY OF VOLUSIA,
JOEL V. BRESSETT,
DENNIS D. PAINTER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 12, 2018)

Before WILSON, WILLIAM PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Thomas McCroden appeals the district court's granting of judgment as a matter of law in favor of Joel V. Bressett and Dennis D. Painter, the Officers, on the basis of qualified immunity under federal law and individual statutory immunity under section 768.28(9) of the Florida Statutes. This case involves the Officers' use of an "arm-bar takedown" maneuver on McCroden, resulting in the dislocation and fracture of his left hip. McCroden argues on appeal that there was a legally sufficient evidentiary basis for a reasonable jury to find in his favor, and that the district court misapplied the law by basing its decision entirely on the Officers' compliance with internal policy. After careful review of the parties' briefs and the record, we affirm.

## I.

We review de novo a district court's grant of a motion for judgment as a matter of law and review the evidence in the light most favorable to the non-moving party. *See Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999). Under Rule 50, a court should grant a motion for judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed.R.Civ.P. 50(a)(1).

"We review de novo a district court's ruling granting or denying qualified immunity, resolving all issues of material fact in favor of the non-moving party." *Bryant v. Jones*, 575 F.3d 1281, 1294 (11th Cir. 2009). To be eligible for qualified

2

immunity, the official must establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred. *Id.* at 1295. McCroden does not dispute that the Officers acted in a discretionary capacity.

The burden then shifts to McCroden to show "that the official is not entitled to qualified immunity." *Id.* To do so, he must show that the Officers violated a constitutional right and that the right was "clearly established . . . in light of the specific context of the case, not as a broad general proposition[,]" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). We have recognized three ways in which a plaintiff can demonstrate that the asserted right was clearly established: (1) showing that a materially similar case has already been decided; (2) pointing "to a broader, clearly established principle" that applies with "obvious clarity" to the factual situation; and (3) arguing that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary. *Loftus v. Clark–Moore,* 690 F.3d 1200, 1204–05 (11th Cir. 2012).

McCroden alleges that the Officers used excessive force against him in violation of his Fourteenth Amendment rights. In deciding whether force deliberately used against a pretrial detainee is constitutionally excessive, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. ___,135 S. Ct. 2466, 2473 (2015). *Kingsley* abrogated the standard we previously used, which

3

required the plaintiff to show that the defendant applied the force "maliciously or sadistically for the very purpose of causing harm," *see Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).[1]

"[O]bjective reasonableness turns on the facts and circumstances of each particular case." *Kingsley*, 135 S. Ct. at 2473 (internal quotation marks omitted). In making this inquiry, our considerations include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* We "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* McCroden can prevail by showing "that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 2473–74.

## II.

McCroden argues that our case law clearly established a broader principle of law that applies with obvious clarity in this case—that gratuitous use of force

---

[1] On remand in *Kingsley*, the Seventh Circuit correctly noted that "*before and after* the Supreme Court's decision in [*Kingsley*], the standards for the amount of force that can be permissibly employed remain the same." *Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015) (per curiam). "[T]he law clearly established that the amount of force had to be reasonable . . . ." *Id.* at 833.

against an individual who is not resisting is excessive.  A principle applies with obvious clarity if "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted."  *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002).  McCroden must show that the Officers' conduct "was so far beyond the hazy border between excessive and acceptable force" that they had to know they were violating the Constitution.  *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000).  Here, while it may be true that this principle is clearly established, it does not apply with obvious clarity in this case.

McCroden asserts that he was a compliant inmate that posed no immediate threat to anyone's safety, and there was no need for the Officers to use force "because he calmly complied with the majority, if not all, the Officers' directives." Although we review the evidence in the light most favorable to McCroden (the non-moving party), we do not accept his version of the facts when obviously contradicted by the record.  *See Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).  Here, we have a video of the entire event, and we view the facts in the light depicted by the video.  *Id.*; *see also Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("Thus, where an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible.").

5

Although McCroden describes himself as a compliant inmate who did not resist, the video shows otherwise. McCroden testified that at some point while being examined by the medic because of cuts on several parts of his body, he had an "emotional meltdown."[2] He became "pissed off" and began cursing at the medic.[3] He also "leaned in" toward the medic, who was within striking distance. Because of McCroden's aggressive behavior, the Officers became concerned for the medic's safety. The Officers attempted to use an escort hold to transport McCroden to a holding cell to calm down. But the video shows McCroden resisting the escort hold, raising his arms and the Officers' arms above their heads. The Officers then take McCroden to the ground using an "arm-bar takedown." The entire event—from McCroden's initial aggressive behavior to the Officers' use of the takedown—lasted about six seconds.

Further, as the district court pointed out when it granted judgment as a matter of law, the Officers acted consistent with Volusia County's policies and procedures. *See Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878 (1979) (stating that courts should defer to the policies and practices that in the judgment of jail officials are needed to maintain order and institutional security). Volusia County's use of force policy authorizes the use of force in self-defense, for the

---

[2] McCroden testified that he is bipolar. He admitted that he would be fine one minute, then "snap" and become verbally or physically aggressive the next minute.

[3] Even before force was used, this disturbance was significant enough to cause an officer in a room down the hall to stop what she was doing and run to assist the Officers.

6

protection of others, "to overcome physical resistance to lawful orders," and to "control behavior that is aggressive, threatening, or otherwise non-compliant." The Officers were taught to use the takedown when resistance is encountered during an escort hold.  They also were not aware of any occasion where a takedown maneuver had ever resulted in a broken bone.  The County describes the risk of injury of the takedown maneuver as "slight."  Indeed, McCroden's own expert testified that the County's use of force policy and training materials were "very good" and "quite thorough."

McCroden cannot show that every reasonable officer facing these circumstances would conclude that the force used was plainly unlawful.  The Officers' use of force was rationally related to a legitimate governmental objective—ensuring the medic's safety as well as their own.  While the extent of injury is relevant to the excessive-force analysis, acceptable levels of force may nonetheless cause injury.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (open-handed shove of boisterous inmate was reasonable even though the inmate suffered "relatively extensive" injuries).

Thus, because no materially similar case declares the Officers' use of force unconstitutional, and the broad principles of law on which McCroden relies do not apply with obvious clarity to the situation facing the Officers, we affirm.

**AFFIRMED.**