[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-14142
Non-Argument Calendar

————————————————

D.C. Docket No. 3:18-cv-00097-CDL-CHW

CHRISTOPHER WHEAT,

Plaintiff - Appellee,

versus

OFFICER JEFF DAY,
Walton County Sheriff's Department,

Defendant - Appellant,

OFFICER J MOUTON,
Shield No. 4616, Walton County Sheriff's Department, et al.,

Defendants.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia

————————————————

(July 2, 2021)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Deputy Sheriff Jeff Day appeals the denial of his motion for summary judgment in this 42 U.S.C. § 1983 action against him by plaintiff Christopher Wheat. The district court denied summary judgment as to Day's affirmative defense of qualified immunity. Since no reversible error has been shown, we affirm the district court.

I.

On April 15, 2018, Wheat—a pretrial detainee at the Walton County Jail— asked to use the shower so that he could apply therapeutic shampoo to his skin to treat his eczema. An unidentified officer refused Wheat's request. Because his skin was "scratching and burning," Wheat used the sink in his room to apply the shampoo, which resulted in the sink overflowing. After Day received reports that Wheat had flooded his room and caused a commotion among the other detainees, five officers, including Day, approached Wheat's room. Day alleges that Wheat was holding an unknown object and ran away with his back to Day when Day entered the room. Wheat offers a different version—that he was reading with his back to the door. But it is undisputed that Day then shot Wheat in the back with his taser without warning. Wheat was taken to the medical department, where the taser prongs were removed and he was cleared to return to his room. Day later

2

explained in his incident report that he used the taser against Wheat "for kicking on the door and flooding his room causing the entire cell to almost incite a riot."

Wheat filed a 42 U.S.C. § 1983 action against Day for using excessive force in violation of the Fourteenth Amendment's Due Process Clause. Day moved for summary judgment, claiming entitlement to qualified immunity. The district court adopted the magistrate judge's report and recommendation—which stated that there was "a triable issue remaining as to Day's use of a taser upon [Wheat]," and "[a] reasonable jury . . . could find that [] Day's actions violated [Wheat]'s constitutional rights"—and denied Day's motion, finding that Day was not entitled to qualified immunity at the summary-judgment stage. Day appeals, arguing that denial was improper as he did not violate a clearly established constitutional right.[1]

II.

We review the district court's denial of qualified immunity at the summary-judgment stage de novo, viewing all facts and making all reasonable inferences in the light most favorable to the nonmoving party. *Tinker v. Beasley*, 429 F.3d 1324, 1326 (11th Cir. 2005) (per curiam).

---

[1] The denial of a motion for summary judgment on qualified-immunity grounds is immediately appealable under the collateral-order doctrine to the extent that the denial turns on a question of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Although the adopted report and recommendation stated that it was denying summary judgment in part because there was a triable issue of fact, Day alleges that his conduct did not constitute a violation of a clearly established right—a question of law reviewable on appeal. *See Bussinger v. City of New Smyrna Beach*, 50 F.3d 922, 924–25 (11th Cir. 1995). Thus we have jurisdiction over this appeal.

Construing the facts in favor of Wheat, we find that Day is not entitled to summary judgment on the basis of qualified immunity. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As an initial matter, it is undisputed that Day was acting within his discretionary authority. That means we are left to determine if Day violated a constitutional right, and if that right was clearly established at the time of his alleged misconduct.

An officer uses excessive force in violation of the Fourteenth Amendment when his use of force is objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 391–92 (2015).[2] We judge objective reasonableness by considering six nonexclusive factors: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by

---

[2] In *Patel v. Lanier County*, we determined that, in light of *Kingsley*, the Fourteenth Amendment objective-reasonableness test is analogous to the Fourth Amendment objective-reasonableness test. 969 F.3d 1173, 1182 (11th Cir. 2020); *accord Piazza v. Jefferson County*, 923 F.3d 947, 952–53 (11th Cir. 2019) ("[I]nasmuch as it entails an inquiry into the objective reasonableness of the officers' actions, the Fourteenth Amendment standard has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment."). Therefore, both Fourth and Fourteenth Amendment excessive-force jurisprudence guide our analysis.

the officer"; and (6) "whether the plaintiff was actively resisting." *Id.* at 397. In making this determination, we take into account what a reasonable officer would have known at the time of the incident. *Id.*

Accepting as true Wheat's account of the facts, all but one of the *Kingsley* factors weighs in Wheat's favor. First, the use of force was disproportionate to its need. In fact, the allegations establish that no force was necessary. Wheat states that he had his back to his cell door and did nothing to provoke Day in the moment. Next, Day apparently made no effort to temper the amount of force used. He gave no instructions or orders. He never attempted to deescalate the situation. And he never even gave Wheat a warning that if he failed to comply with Day's instructions, Day would need to resort to the use of force to control the situation. Finally, at the time of the incident, there does not appear to have been a reasonably perceived security problem or threat, nor was Wheat actively resisting. Wheat was confined in his cell when Day entered. Upon Day's entrance, Wheat was nonresistant and nonbelligerent. Tasing Wheat was not preventative or defensive. It was punitive if, as Day admitted, it was a response to Wheat's *prior* conduct.

Only the second *Kingsley* factor—the extent of Wheat's injury—weighs in Day's favor. But with an overwhelming number of *Kingsley* factors weighing against Day, we find that Day's use of the taser constituted excessive force. With

5

that in mind, the next question is whether the law governing this case was clearly established at the time of the alleged violation.

The law is clearly established when a reasonable officer would have "fair warning" that his conduct would violate a constitutional or statutory right. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc). "[F]or decades our decisions have embraced and reiterated the principle that an officer may not continue to use force after a detainee has clearly stopped resisting." *Piazza v. Jefferson County*, 923 F.3d 947, 955 (11th Cir. 2019). We have, for example, declined to extend qualified immunity to officers who pepper sprayed a detainee who was obeying commands, *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008), *abrogated on other grounds by Kingsley*, 576 U.S. 389, punched a handcuffed suspect in the stomach, *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008), and tased a nonviolent suspect, *Fils v. City of Aventura*, 647 F.3d 1272, 1288–90 (11th Cir. 2011). *See Piazza*, 923 F.3d at 955–56 (recent opinion finding that these cases put officer on notice that "tasing an already-tased, incapacitated, incontinent, and unresisting detainee" violated the Fourteenth Amendment). In light of these cases, we can say with confidence that the law put Day on notice that his alleged conduct—tasing a nonresistant, nonbelligerent detainee—violated the Fourteenth Amendment. Accordingly, we affirm the district court's denial of summary judgment.

**AFFIRMED.**