## Chapple-Dantzler v City of New York

2024 NY Slip Op 34143(U)

November 25, 2024

Supreme Court, New York County

Docket Number: Index No. 150204/2023

Judge: J. Machelle Sweeting

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. J. MACHELLE SWEETING**

*Justice*

PART     62

-------------------------------------------------------------------------------X

SARITA CHAPPLE-DANTZLER

Plaintiff,

- v -

THE CITY OF NEW YORK,

Defendant.

-------------------------------------------------------------------------------X

INDEX NO.     150204/2023

MOTION DATE     05/16/2023

MOTION SEQ. NO.     002

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 1, 2, 3, 15, 16, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46

were read on this motion to/for                    DISMISS                    .

Defendant the City of New York moves to dismiss plaintiff's first amended complaint (NYSCEF Doc. No. 32) in its entirety. Plaintiff opposes the motion and, based on what she contends is newly discovered evidence, plaintiff cross-moves for renewal of the court's February 23, 2023, decision and for leave to further amend the complaint to reflect the new information.

When this lawsuit was commenced, plaintiff, who is "of Black/African descent" (*id.*, ¶ 4), had worked for the City's Department of Corrections ("DOC") for 14 years. The complaint alleges that in August 2021 an OATH hearing had been commenced against her in which it was alleged that plaintiff used excessive force against inmates on seven occasions - six times due to her use of oleoresin capsicum spray (commonly referred to as "pepper spray") - and one time due to her use of physical force against an inmate. The hearing was held in 2021 on August 3 and 5, October 22,

**150204/2023   CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**
**Motion No.  002**

**Page 1 of 11**

December 1,[1] 2, and 10, and it concluded on January 7, 2022. Plaintiff contends that prior to the 2021 OATH hearing, there had never been any disciplinary actions against her.

The OATH officer issued her conclusions and recommendations on September 22, 2022 (NYSCEF Doc. No. 36). Specifically, the hearing officer found:

> "The Department established that [plaintiff] used excessive and unnecessary force in her deployment of chemical agents in six incidents . . . . The Department established that [plaintiff] used prohibited, high impact force against inmate Harris when she used institutional keys to strike him in the head in retaliation for biting her and that she did so while the inmate was rear-cuffed and being brought to his feet by other officers. The Department established that [plaintiff] filed false and misleading use of force reports for [four of the] incidents . . . . (*id.*, *37)."

The report also stated that plaintiff had a prior disciplinary history – specifically, for conduct unbecoming an officer in 2013, and for use of force in July 2016 (*id.*). Based on these conclusions, the OATH officer recommended that plaintiff be terminated (*id.*, *37-39). DOC sent a letter to plaintiff, dated January 3, 2023, which terminated plaintiff. In a subsequent communication, dated January 6, 2023, DOC stated that the termination was effective on January 13, 2023 (NYSCEF Doc. No. 26).

In the instant action, plaintiff challenges the decision to fire her on the ground that, except for the incident in which she struck an inmate, none of the incidents concerning plaintiff's use of pepper spray resulted in injuries and, under New York and Federal law, "there can be no claim that the underlying force used was excessive" (*id.*, ¶ 22). Plaintiff further contends that her use of force was permissible under New York State Correction Law ("Correction Law") Section 137 (5), which states that correction officers may use physical force: "in self-defense, or to suppress a revolt or insurrection. When any inmate, or group of inmates, shall offer violence to any person, or do or attempt to do any injury to property, or attempt to escape, or resist or disobey any lawful

---

[1] The record indicates that neither plaintiff nor her counsel appeared on December 1, 2021, and attempts to reach them were unsuccessful. The hearing proceeded without them on that date (*see* NYSCEF Doc. No. 36, *2-3).

**150204/2023 CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**
**Motion No. 002**

**Page 2 of 11**

[* 2]

direction and that when an inmate or group thereof injures or attempts to injure another person, attempts to escape, injures or attempts to injure property." Plaintiff contends that under the above circumstances, officers may "use all suitable means to defend themselves, to maintain order, to enforce observation of discipline, to secure the persons of the offenders and to prevent any such attempt or escape" (Correction Law § 137 [5]).

Plaintiff contends that she complied with these directives, as the use of pepper spray is a level C use of force and "is the least amount of force that can be used" (NYSCEF Doc. No. 32, ¶ 25).

The complaint provides DOC's uniform workforce demographics. In defendant's 2018 workforce report, which is the last one available to plaintiff, 41% of the uniformed correction officers were women; 58% were Black; 24% were Hispanic; 5% were Asian; and 0.9% were Alaskan or Native American (NYSCEF Doc. No. 32, ¶ 29). Further, 60% of supervising officers, including captains and above, were female; 73% were Black; 5% were Asian; and 0.5% were Alaskan or Native American (*id.*, ¶ 30). The complaint goes on to cite statistics showing that wardens, including deputy wardens in command, were majority female and majority Black (*id.*, ¶¶ 31-25). The complaint suggests that because DOC employees are predominantly women and minorities, the decision to fire people for using pepper spray is part of a plan to reduce staffing, which disproportionately affects these protected groups.

Based on the above, plaintiff asserts four causes of action: first, that defendants owe plaintiff compensatory damages for emotional distress under New York City Administrative Code ("Administrative Code") § 8-120 (a) (8) due to their alleged discrimination based on her race and gender; second, that defendants violated the equal protection provision of the State Constitution, which prohibits race- and gender-based discrimination; third, that defendants violated Section 296

**150204/2023   CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**          **Page 3 of 11**
  **Motion No.  002**

[* 3]

3 of 11

of the State Human Rights Law ("SHRL") when they disciplined her "for the baseless low-level uses of force . . . as a pretext for deprivation of [her] right to due process . . . causing Plaintiff severe emotional distress" (NYSCEF Doc. No. 32, ¶ 55) and fourth, that defendants brought a baseless disciplinary proceeding against plaintiff in violation of Section 8-107 of the City Human Rights Law ("CHRL"). Plaintiff e-filed the summons and complaint on January 6, 2023 (NYSCEF Doc. Nos. 1, 2) and filed the amended complaint on January 18, 2023 (NYSCEF Doc. No. 3).

On the same date that plaintiff filed the amended complaint, she filed an order to show seeking a stay of her termination to allow her to take maternity bedrest due to her high-risk pregnancy (NYSCEF Doc. No. 16). At oral argument on February 23, 2023, in regard to Motion Sequence No. 001, this court noted that "there could have been an appeal of [the OATH] decision or there could've been [an] Article 78 that was filed, and I don't have any record here that either of those two areas of recourse were explored" (*Chapple-Dantzler v City*, Index No. 150204/2023, Oral Arg Tr, Sweeting, J., Feb. 23, 2023 [*Chapple-Dantzler* Tr] at 6, lines 17-20). Additionally, the court stated that, as plaintiff already was terminated and she did not make other challenges to the OATH or DOC decisions, it could not "stay or enjoin . . . the agency from doing that which was already done" (*id.* at 6, lines 22-23). Accordingly, the court denied the order to show cause (NYSCEF Doc. No. 22).

As stated, plaintiff's opposition includes a cross-motion to renew her application for injunctive relief, which this court denied in its earlier decision (NYSCEF Doc. No. 22), and to amend the first amended complaint. The court addresses the cross-motion first.

**150204/2023    CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**
**Motion No. 002**

**Page 4 of 11**

[* 4]

As a preliminary matter, that branch of plaintiff's cross-motion seeking to renew the application for injunctive relief is denied, as this court cannot stay or enjoin defendant from firing plaintiff, as it has already been done and the applicable time period in which to challenge this determination has already expired (*see Chapple-Dantzler* Tr at 6 lines 22-23).

After careful consideration of all of the evidence and the record in this case, this court also denies that branch of plaintiff's cross-motion that seeks to amend the first amended complaint. When plaintiff committed the violations that resulted in her termination, the use of force directive that went into effect on September 27, 2017 applied. Pursuant to the directive, "use of force" is defined as "any instance where Staff use their hands or other parts of their body, objects, instruments, *chemical agents*, electronic devices, firearms, or any other physical method to restrain, subdue, or compel an Inmate to act or stop acting in a particular way" (NYSCEF Doc. No. 33, ¶ III § A [emphasis supplied]). The use of pepper spray was considered a Class C Use of Force if there was no injury other than easily-treated contamination (*id.*, ¶ IV § I). According to plaintiff, rather than use the applicable guidelines, the OATH officer applied "Command Discipline Policy, Directive 4257R-B, effective October 27, 2022, that mandates that all "high impact" use of force are to be Memorandum of Complaints to be heard at OATH" (NYSCEF Doc. No. 34 [Proposed Second Amended Complaint], ¶ 84).

Plaintiff argues that the retroactive application of the 2022 standard is unconstitutionally vague and violates her right to due process. However, as defendant points out, the OATH officer expressly applied the 2017 guidelines (*see* NYSCEF Doc. No. 36, *4-7). Plaintiff's claim that she was denied due process is also belied by the fact that she was represented by counsel at the hearing and that she had the right to challenge the OATH order and/or the decision to terminate her.

**150204/2023   CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**
**Motion No.  002**

**Page 5 of 11**

5 of 11

[* 5]

Plaintiff also seeks to amend on the grounds that the guidelines themselves are unconstitutional because DOC is required to evaluate use of force allegations under the Fourth Amendment to the United States Constitution. However, the cases and statute plaintiff relies on are inapposite. For instance, in *Kingsley v Hendrickson* (576 US 389, 397 [2015]) the United States Supreme Court held that the deliberate use of force is prohibited when a reasonable officer would not have considered the force excessive under the circumstances.[2] Here, the OATH officer determined that plaintiff's conduct was unreasonable, and that plaintiff did not issue the mandated warning before she used the pepper spray. *Hudson v McMillian* (503 US 1, 10 [1992]), which evaluates a plaintiff's Eighth Amendment challenges, militates against plaintiff's argument because it states that the use of force against a prisoner need not result in a serious injury where there is an unnecessary and wanton infliction of pain. Two State cases that plaintiff cites, *People ex rel. Burse v Schiraldi* (74 Misc 3d 927 [Sup Ct, NY County 2021] [involving pretrial detention]) and *People ex rel. Squirrel v Langley* (68 Misc 3d 498 [Sup Ct, Putnam County 2020] [involving variety of detention statuses]), also deal with challenges to the conditions of confinement under the Eighth Amendment's bar against cruel and unusual punishment. These cases also are distinguishable because none of them evaluate decisions to terminate a corrections officer.

Next, the court considers defendant's motion to dismiss. Defendant first argue that the complaint does not raise an inference of discriminatory treatment based on race and/or gender. It cites *Harrington v City of New York* (157 AD3d 582, 585 [1st Dept 2018]), which states that "[a] plaintiff states a claim of invidious discrimination under the State and City HRLs by alleging (1) that he/she is a member of a protected class, (2) that he/she was qualified for the position, (3) that he/she was subjected to an adverse employment action (under State HRL) or he/she was treated

---

[2] The court described this as an objective standard – that is, a court should not consider the individual officer's state of mind, but instead should use the "reasonable officer" standard (*Kingsley*, 576 US at 396-397).

**150204/2023   CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**                                    **Page 6 of 11**
 **Motion No.  002**

differently or worse than other employees (under City HRL), and (4) that the adverse or different treatment occurred under circumstances giving rise to an inference of discrimination" (*see* NYSCEF Doc. No. 27 [defendant's mem in support], *4-6).[3] Defendant notes that an amendment to the SHRL in June 2019 requires that the provisions be construed liberally even where the language parallels that of the federal civil rights laws (*id.*, *5, citing Exec Law § 300; *Golston-Green v City of New York*, 184 AD3d 24, 35 n 1 [2d Dept 2020]).[4]

Despite the liberal standards applicable to the City and State laws, defendant stresses that these are not mere civility codes but ones that require plaintiff to raise an inference that she was treated less well than those who do not share her protected status (*see* NYSCEF Doc. No. 27, *6, citing *Williams v New York City Hous. Auth.*, 61 AD3d 62, 79 [1st Dept 2009] [involving summary judgment motion]). Further, defendant notes that a conclusory allegation of discrimination will not suffice, and reliance on statistics alone is similarly unavailing to state a claim.

According to defendant, although plaintiff shows an adverse employment action – that is, her termination – she does not assert any details to support her claim of race or sex discrimination. Further, defendant notes that plaintiff does not provide examples of any similarly situated employees who received adverse treatment or differently situated employees who received more favorable treatment. Therefore, it contends, she has not met the required elements to support her claims.

---

[3] Under the CHRL, rather than show an adverse action, the plaintiff simply must show that the action was disadvantageous (*Harrington*, 157 AD3d at 585).

[4] Defendant adds that the amendment only applies prospectively, to claims that accrue after its effective date of October 11, 2019, but that the distinction is not critical as plaintiff has not stated a *prima facie* case even under the more liberal standards of the CHRL.

**150204/2023   CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**            **Page 7 of 11**
  **Motion No.  002**

7 of 11

[* 7]

In addition, defendant states that the complaint does not show a causal connection between the fact that plaintiff belongs to a protected class and to any alleged discrimination and that the complaint also fails to connect the statistics it cites to discrimination of any kind. Instead, defendant's argue, the statistics militate in defendant's favor, as they show that there are numerous Black and female employees in DOC, especially in higher ranking positions. Defendant also argues that the OATH report, which is an exhibit to the complaint, demonstrates the lack of a discriminatory motive or discriminatory animus because the report specifically refers to plaintiff's use of excessive force and her alleged false reports, which were sufficient, non-discriminatory grounds, for plaintiff's termination.

Defendant also argues that plaintiff has not satisfied the requirements for showing that the policies in question, though facially neutral, had a disproportionate impact on women or people of color. It notes that courts scrutinize hiring standards when they "'adversely affect[] equal employment opportunity for a protected class of persons,'" even if the criteria are facially neutral (NYSCEF Doc. No. 27 [Mem in Support], quoting *Matter of Sontag v Bronstein*, 33 NY2d 197, 201 [1973]). As defendant correctly argues, statistics alone are insufficient to show disparate impact. Here, plaintiff has not shown that the employment criteria in question has had a disproportionate impact on women or people of color.

Finally, defendant argues that plaintiff appears to assert a cause of action against defendant under the State Constitution's equal protection clause (NYSCEF Doc. No. 27, citing NY CONST Art I, § 11). Defendant acknowledges that plaintiffs can sue the City under the equal protection clause (NYSCEF Doc. No. 27, *11, citing *Brown v State of New York*, 89 NY2d 172, 188 [1996]), but emphasizes that this right exists only if the plaintiff cannot obtain full satisfaction through other means (NYSCEF Doc. No. 27, *11-12). Here, defendant states that plaintiff has a remedy

**150204/2023  CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**          **Page 8 of 11**
**Motion No.  002**

8 of 11

under the State and City Human Rights Laws. Accordingly, defendants state that the constitutional claim is barred.

In opposition, plaintiff succinctly states that a large percentage of correction officers are minorities and/or females. Therefore, although facially neutral on its face, implementation of the use of force policy has a greater impact on minorities and females. Plaintiff argues that the policy is unconstitutionally vague and that the OATH officer applied the updated policy retroactively. Finally, plaintiff argues that her disparate impact claim is viable under the State's Constitution because plaintiff is only one member of the protected class.

This court has considered all of the parties' arguments, and, after such consideration, finds that plaintiff has not pled a viable claim under the SHRL or the CHRL and that the complaint does not allege that defendant made its decision "under circumstances that give rise to an inference of discrimination" (*Thomas v Mintz*, 182 AD3d 490, 490 [1st Dept 2020]). It does not allege that similarly situated males or white correction officers were treated more favorably than plaintiff (*id.*; *see Lively v Wafra Inv. Advisory Group, Inc.*, 211 AD3d 432, 433 [1st Dept 2022] [action against private employer]); and it does not "allege that any of [her] colleagues or supervisors made any explicitly or implicitly invidious comments about her race" or gender (*Etienne v MTA N.Y. City Tr. Auth.*, 223 AD3d 612, 613 [1st Dept 2024] [noting that even a stray comment, without more, would be insufficient]). The statement that defendant terminated plaintiff due to her race and gender constitutes a legal conclusion that, without accompanying factual allegations, is an insufficient basis for plaintiff's claims (*see Matter of Martinez v City of New York*, 206 AD3d 532, 533 [1st Dept 2022] [under CHRL]). As plaintiff has not alleged viable claims under these laws, her first cause of action for damages fails.

**150204/2023   CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**        **Page 9 of 11**
  **Motion No.  002**

9 of 11

As mentioned above, during the oral argument for Motion Sequence No. 001, the court noted that plaintiff neither appealed the OATH decision nor commenced an Article 78 proceeding challenging her termination. (*Chapple-Dantzler* Tr at 6 lines 17-20). Nonetheless, she implicitly challenges here termination here. The cases relied on by plaintiff are distinguishable for one or more of the following reasons: 1) they do not involve the number of incidents at issue here, 2) they do not involve the falsification of reports, 3) they do not involve the additional allegation that the plaintiff or petitioner used physical force against an inmate, and 4) they involve use of force claims against police officers effectuating an arrest.

With regard to plaintiff's claim under the New York State Constitution, the right to assert tort claims under the state's Constitution is narrowly drawn (*see Martinez v City of Schenectady*, 97 NY2d 78, 83 [2001]). An individual does not have a private right of action to recover damages under the Constitution if the alleged wrongs can be redressed by other means (*Berrior v City of New York*, 212 AD3d 569, 569-570 [1st Dept 2023]). Here, plaintiff's allegations are encompassed by her other causes of action. Further, as this court has stated, plaintiff could have filed an appeal or Article 78 challenge to the decision she now questions (*Kashelkar v State*, 30 AD3d 163, 164 [1st Dept 2006]).

**150204/2023   CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**   **Page 10 of 11**
**Motion No.  002**

10 of 11

For all of the reasons set forth herein, it is hereby:

**ORDERED** that plaintiff's cross-motion is **DENIED**; and it is further

**ORDERED** that defendant, The City of New York's motion is **GRANTED**; and it is further

**ORDERED** that this action is dismissed.

| 11/25/2024 | | | |
|---|---|---|---|
| **DATE** | | **J. MACHELLE SWEETING, J.S.C.** | |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**150204/2023   CHAPPLE-DANTZLER, SARITA vs. THE CITY OF NEW YORK**
**Motion No.  002**

Page 11 of 11

[* 11]