**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ZACHARY ROWELL, as Special
Administrator in the matter of the Estate of
Marvin A. Rowell, and individually,

      Plaintiff - Appellant,

v.

BOARD OF COUNTY
COMMISSIONERS OF MUSKOGEE
COUNTY, OKLAHOMA; DAKOTA
WEST, in his individual capacity; JACOB
SLAY, in his individual capacity; LACY
ROSSON, in her individual capacity; ROB
FRAZIER, Sheriff, in his official capacity,

      Defendants - Appellees,

No. 19-7062

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:18-CV-00125-RAW)**
_____

Stanley D. Monroe, Stanley D. Monroe, PC (James A. McAuliff, with him on the briefs),
Tulsa, Oklahoma, for the Plaintiff - Appellant.

Andy A. Artus (Jamison C. Whitson, and Taylor M. Riley, with him on the brief), Collins
Zorn & Wagner, P.C., Oklahoma City, Oklahoma, for Board of County Commissioners
of Muskogee County, Oklahoma, Jacob Slay, Lacy Rosson, and Sheriff Rob Frazier,
Defendants - Appellees.

Carson C. Smith (Robert S. Lafferrande, and Charles A. Schreck, with him on the brief),
Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for
Dakota West, Defendant - Appellee.

———————————————————

Before **MATHESON**, **BACHARACH**, and **MCHUGH**, Circuit Judges.

———————————————————

**MATHESON**, Circuit Judge.

———————————————————

Marvin A. Rowell was arrested for public intoxication and brought to the Muskogee County Jail (the "Jail") in Muskogee, Oklahoma. In response to Mr. Rowell's uncooperative conduct during processing, Jail officials decided to move him from the intake room to another room to place him in a restraint chair. In escorting Mr. Rowell down a hallway, Officer Dakota West applied forward pressure to Mr. Rowell's right arm. After taking a few steps, Mr. Rowell fell and hit his head. He died shortly after from multiple blunt impact injuries to his head, which caused an acute subdural hematoma.

The Estate of Mr. Rowell (the "Estate"), through administrator Zachary Rowell, sued Officer West, alleging a Fourteenth Amendment excessive force violation under 42 U.S.C. § 1983. The Estate also brought claims for failure to intervene against Officer Jacob Slay, supervisory liability against Shift Supervisor Lacy Rosson, and municipal liability against Muskogee County Sheriff Rob Frazier in his official capacity and the Board of County Commissioners of Muskogee, Oklahoma (the "County"). The district court granted summary judgment for the Defendants because it found that Officer West had not committed a constitutional violation. The Estate timely appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

# I. BACKGROUND

## A. *Factual Background*

We describe (1) the arrest and initial processing of Mr. Rowell at the Jail, (2) Mr. Rowell's time in the intake room, (3) Mr. Rowell's fall in the hallway, and (4) the events immediately after Mr. Rowell's fall. We draw primarily from Jail video footage.[1]

### 1. The Arrest and Initial Processing

On an early Saturday morning in January 2016, Mr. Rowell was arrested for public intoxication. When he arrived at the Jail, an official brought him to a hallway. For roughly two minutes, Shift Supervisor Rosson questioned Mr. Rowell and then another officer physically searched him. The video shows that Mr. Rowell slurred his words and stumbled around. He appeared able to understand and answer Shift Supervisor Rosson's questions.

### 2. The Intake Room

After this initial questioning, Mr. Rowell was brought to a small intake room. Officer Slay and Shift Supervisor Rosson were working in an adjoining room at the intake window, doing paperwork to book and process Mr. Rowell and one other detainee

---

[1] Because this appeal arises from the district court's grant of summary judgment, we describe the facts in the light most favorable to the Estate as the nonmoving party. *See Ezell v. BNSF Ry. Co.*, 949 F.3d 1274, 1278 (10th Cir. 2020). "[W]e will accept the version of the facts portrayed in the video, but only to the extent that it 'blatantly contradict[s]' the plaintiff's version of events." *Emmett v. Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

who was in the intake room.  Officer West was in a control area not visible in the video.  He could see and hear the intake room through a video feed.

Mr. Rowell was in the intake room for almost eight minutes.  He continued to display signs of intoxication by stumbling while walking and swaying from side to side while standing.  He intermittently approached the window.  At one point, while Mr. Rowell stood near the window, Officer Slay told Mr. Rowell to "sit down for me."  Suppl. App., Vol. I at 80, 9:42-9:48.  Mr. Rowell leaned near the window for about 20 seconds before returning to sit on a bench.  About one-and-a-half minutes later, Mr. Rowell stood and started to wander around again.  Shift Supervisor Rosson told him that he needed "to calm down."  *Id.* at 12:16-12:20.  About one minute later, Officer West appeared at the intake window and asked Mr. Rowell, "What are you getting hyped up about?"  *Id.* at 13:33-13:36.  Mr. Rowell said something inaudible.  Officer West told him to "chill out" and to "sit down."  *Id.* at 13:37-13:47.

Mr. Rowell was not violent or disruptive in the intake room.  But he was less cooperative than the other detainee, whom the officers never admonished and who remained seated for most of the time.

3. **Mr. Rowell's Fall**

Officers West and Slay exited from behind the window and entered the intake room to confront Mr. Rowell.  They spoke with him for about 45 seconds, then led him into the adjacent Jail hallway, intending to bring Mr. Rowell to a restraint chair located in

4

another room.[2]  Mr. Rowell walked out first; Officer West walked one step behind him; and Officer Slay trailed a few steps behind Officer West.  Mr. Rowell took a few steps down the hall with his head turned back over his right shoulder while speaking to Officers West and Slay.  Officer West grabbed his upper right arm and applied forward pressure as they continued to move forward.

While Officer West was applying forward pressure to Mr. Rowell's right arm and while Mr. Rowell's head was still turned over his right shoulder looking back toward Officer West, Mr. Rowell fell into the wall and onto the ground, hitting his head.

The conversation between Officer West and Mr. Rowell during the few seconds in the hallway before the fall is inaudible on the video.  Officer Slay testified at his deposition that Mr. Rowell "[kept] turning trying to face [Officer West], and [Officer West] [was] telling him you need to walk straight."  App., Vol. I at 125.  He further testified that Mr. Rowell "was saying stuff," but "his speech was slurred and impaired." *Id.* at 126.  Officer West testified at his deposition that he decided to grab Mr. Rowell and lead him down the hallway "[b]ecause when I asked him to walk straight, walk forward, he was still having his body turned towards me, still talking, still being belligerent."  *Id.* at 167.  Officer West testified that he "was using the force I felt necessary to kind of

---

[2] Shift Supervisor Rosson testified that, before Officer West and Officer Slay went into the intake room, she had given Officer West authorization to place Mr. Rowell in the restraint chair if Mr. Rowell did not change his behavior.  Officer West testified that he decided to place Mr. Rowell in the restraint chair, after consulting with Shift Supervisor Rosson, because he was being loud and had not complied with directives to sit down.

guide him forward so he would walk forward.  And he kept on turning his body towards

me.  And that's where we kind of go into the wall and that's where he just falls down."

*Id.* at 168.

4. **The Post-Fall Events**

After the fall, Mr. Rowell remained motionless on the ground.  Officer West knelt

over Mr. Rowell's body and attempted to resuscitate him.  Officer Slay informed Shift

Supervisor Rosson over the radio that they needed to call emergency medical services.

Mr. Rowell was taken to Saint Francis Hospital in Tulsa, Oklahoma, and pronounced

dead shortly thereafter.  The cause of death was multiple blunt impact injuries to the

head, which caused an acute subdural hematoma.

B. *Procedural Background*

The Estate sued in Oklahoma state court, and the Defendants removed the case to

federal court.  The Estate brought claims under 42 U.S.C. § 1983 against (1) Officer West

for excessive force in violation of the Fourteenth Amendment, (2) Officer Slay for failure

to intervene, (3) Shift Supervisor Rosson for deliberate indifference in her individual

supervisory capacity, (4) Sheriff Frazier in his official capacity, and (5) the County for

municipal liability.[3]

---

[3] The Estate also brought state law claims against the County.  The district court
declined to exercise supplemental jurisdiction over those claims after entering judgment
for the Defendants on the § 1983 claims.  It remanded the state law claims to state court.
The Estate does not contest the remand.

The Defendants moved for summary judgment. Officer West invoked qualified immunity. He argued that he did not commit a constitutional violation because his conduct was objectively reasonable under *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), in which the Supreme Court stated the standard for excessive force claims brought by pretrial detainees. He also contended that he did not violate clearly established law because no Supreme Court or Tenth Circuit case was sufficiently similar to the events that occurred at the Jail. Officer Slay and Shift Supervisor Rosson argued they could not be liable without an underlying constitutional violation and alternatively that they were entitled to qualified immunity. The Sheriff and the County argued they could not be liable without an underlying constitutional violation and that the Estate's claims failed on the merits.

The district court granted summary judgment to all Defendants. It "decline[d] to adopt [Officer West's] perspective that [Mr. Rowell] demonstrated more than mild 'non-compliance,' 'protest,' and 'resistance.'" App., Vol. III at 746. The court noted that "[Mr. Rowell] suffered severe injury, did not seem to present a severe security problem, and was not actively resisting." *Id.* But the court found "no constitutional violation, simply because the force used appears to be *de minimis*." *Id.* It observed that without a constitutional violation, "the court need not address [Officer West's] alternative ground of qualified immunity," but that based on Tenth Circuit case law, "summary judgment based on qualified immunity would be appropriate as well." *Id.* at 747-48. The district

7

court granted summary judgment to the remaining Defendants, whose liability depended on an underlying constitutional violation.

The Estate timely appealed. We now affirm.

## II. DISCUSSION

### A. *Standard of Review*

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Twigg*, 659 F.3d at 997. "However, we cannot ignore clear, contrary video evidence in the record depicting the events as they occurred." *Carabajal v. City of Cheyenne, Wyo.*, 847 F.3d 1203, 1207 (10th Cir. 2017). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (quotations omitted).

### B. *Legal Background*

#### 1. **Qualified Immunity**

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Henderson v. Glanz*, 813 F.3d 938, 951 (10th Cir. 2015) (quotations

8

omitted). "A defendant's motion for summary judgment based on qualified immunity imposes on the plaintiff 'the burden of showing both (1) a violation of a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation.'" *Burke v. Regalado*, 935 F.3d 960, 1002 (10th Cir. 2019) (quoting *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877 (10th Cir. 2014)). We exercise our "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

2. **Excessive Force Under the Fourteenth Amendment**

Mr. Rowell was a pretrial detainee, so the Fourteenth Amendment's Due Process Clause governs his claim of excessive force. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."); *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). A defendant violates the Fourteenth Amendment by purposely or knowingly using force against a pretrial detainee that is "objectively unreasonable." *Kingsley*, 576 U.S. at 396-97.

Objective reasonableness under *Kingsley* turns on the "facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of

9

hindsight." *Id.* The analysis must account for the "legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (brackets and quotations omitted). The objective reasonableness standard "protects an officer who acts in good faith," and who is "often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 399 (quotations omitted).

In *Kingsley*, the Supreme Court listed non-exclusive factors that may bear on whether an officer's use of force on a pretrial detainee was objectively reasonable:

> (1) "the relationship between the need for the use of force and the amount of force used," *id.* at 397,
>
> (2) "the extent of the plaintiff's injury," *id.*,
>
> (3) "any effort made by the officer to temper or to limit the amount of force," *id.*,
>
> (4) "the severity of the security problem at issue," *id.*,
>
> (5) "the threat reasonably perceived by the officer," *id.*, and
>
> (6) "whether the plaintiff was actively resisting," *id.*

### C. *Analysis*

The Estate argues that because "the district court concluded [Mr. Rowell] was not noncompliant, did not present a security problem, was not actively resisting and suffered severe injury . . . no force of any kind should have been employed and by so doing, the

10

force was excessive." Aplt. Br. at 25 (emphasis removed). It contends that "[t]he use of force both in the decision to place [Mr. Rowell] in the restraint chair and in pushing him as he walked down the hallway was gratuitous force." *Id.* at 26. If we reverse the grant of summary judgment to Officer West, the Estate asserts we must reverse as to the remaining Appellees. We disagree with these arguments and conclude the district court properly found Officer West did not commit a constitutional violation. We therefore affirm as to all Appellees.[4]

1. **Officer West**

Application of the *Kingsley* factors shows that Officer West's use of modest forward pressure to Mr. Rowell in the hallway was objectively reasonable.[5]

---

[4] The Estate argues that the district court misapplied the summary judgment standard by failing to determine whether the Defendants made a *prima facie* showing to support summary judgment, by improperly weighing the evidence, and by failing to determine whether genuine issues of material fact existed. Based on our careful review of the record, we find the district court correctly described the events after it "reviewed the jail video . . . , which in the [district] court's view [was] largely dispositive, despite being inaudible at various times." App., Vol. III at 744. In any event, we review the grant of summary judgment *de novo*.

[5] Officer West contends he used *de minimis* force that is beyond the reach of the Fourteenth Amendment. The Estate counters that "the use of what the district court characterized as *de minimis* force is not a bar to a claim of excessive force under the Fourteenth Amendment." Aplt. Br. at 25. We need not resolve this debate because we find that, applying the *Kingsley* factors, Officer West's use of force was objectively reasonable.

11

a. *Relationship between the need for the use of force and the amount of force used*

The first *Kingsley* factor favors Officer West. In assessing this factor, we consider how a reasonable officer in Officer West's position would have perceived Mr. Rowell's conduct. *See Kingsley*, 576 U.S. at 397 ("A court must make [the objective reasonableness] determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time.").

Mr. Rowell repeatedly wandered around the intake room and intermittently approached the intake window. He was visibly intoxicated, swayed when he stood in place, and leaned against the intake window. Although he was not violent or disruptive, he did not obey instructions from Officers West and Slay and Shift Supervisor Rosson to be calm and sit down.

Mr. Rowell continuously spoke with the officers as they led him out of the intake room. Rather than walk down the hallway facing straight, he had turned his head back over his right shoulder so his torso was sideways and pointed at the right wall as he walked. On the hallway video he appeared intoxicated and unable to walk straight.

Based on the foregoing, it was objectively reasonable for Officer West to grab Mr. Rowell's arm and apply modest forward pressure to guide him down the hallway. *See Nosewicz v. Janosko*, 754 F. App'x 725, 734 (10th Cir. 2018) (unpublished) (noting that

12

the "level of force necessary to gain compliance, but no more," is justified).[6] "[T]he force was . . . proportional to the need presented" to guide Mr. Rowell. *Booker*, 745 F.3d at 424.[7]

---

[6] Although not precedential, we find the reasoning of unpublished decisions cited in this opinion instructive. *See* 10th Cir. R. 32.1 ("Unpublished decision are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

[7] The Estate argues that the decision to place Mr. Rowell in the restraint chair violated the Jail's Use of Force Policy, and "because there was no need for the use of force as defined by the Use of Force policy, all conduct after the decision was made which was in furtherance of the use of the restraint chair was objectively unreasonable." Aplt. Reply Br. at 13-14. We agree with the district court that "[t]he decision to place [Mr. Rowell] in the restraint chair is, under the present record, irrelevant." App., Vol. III at 747.

First, the restraint chair decision bore no proximate causal relation to Officer West's conduct in the hallway. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006) (applying tort law proximate cause principles in a § 1983 action).

Second, objective reasonableness under the Fourteenth Amendment does not depend on compliance with state and local law and policies. In *Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005), we found that whether "an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant." *See also Moreno v. Taos Cnty. Bd. of Comm'rs*, 587 F. App'x 442, 446 (10th Cir. 2014) (unpublished) ("The district court's finding that evidence of violation of Taos County policy was inadmissible as to the excessive force claim comports with our Fourth Amendment jurisprudence."). We noted that "the violation of police regulations is insufficient to ground a § 1983 action for excessive force." *Tanberg*, 401 F.3d at 1163. The use of force violates the Fourth Amendment "if it is unreasonable under the circumstances a law enforcement officer confronts." *Id.* The *Tanberg* reasoning applies here, and thus objective reasonableness under the Fourteenth Amendment does not depend on the Defendants' compliance with Jail policy. *See McCowan v. Morales*, 945 F.3d 1276, 1283 n.6 (10th Cir. 2019) ("[T]he same objective standard now applies to excessive-force claims brought under either the Fourth or the Fourteenth Amendment.").

13

b. *Extent of the plaintiff's injury*

The second *Kingsley* factor favors the Estate because Mr. Rowell died as a result of his injury.

c. *Effort made to temper or limit the amount of force*

The third *Kingsley* factor has minimal applicability because the incident lasted only a few seconds. To the extent it applies, this factor favors Officer West because he did not touch Mr. Rowell at first and applied modest forward pressure only when Mr. Rowell continued to stumble in the hallway and turn his head over his shoulder while talking to the officers.

d. *Remaining* Kingsley *factors*

The final three *Kingsley* factors—the severity of the security problem posed by Mr. Rowell, the threat reasonably perceived by Officer West, and whether Mr. Rowell was actively resisting—slightly favor the Estate. As noted above, Mr. Rowell was uncooperative and intoxicated, but he was not violent or actively resisting. *See Nosewicz*, 754 F. App'x at 734 (distinguishing between a mere refusal to obey a command and physical resistance).

e. *Balancing the* Kingsley *factors*

On balance, we conclude Officer West reasonably applied modest forward pressure to a visibly intoxicated and uncooperative Mr. Rowell to guide him down the hallway. *See Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007) (en banc) ("We have little difficulty concluding that a small amount of force, like grabbing [the arrestee]

14

and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment."); *Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997) (finding reasonable the force used to effectuate a *Terry* stop that consisted of "grabb[ing] [the arrestee's] arm three separate times . . . [with] relatively minor application of force that did not exceed the amount allowable under the circumstances"). Officer West acted similarly to the officer in *Routt v. Howard*, 764 F. App'x 762 (10th Cir. 2019) (unpublished). There, applying *Kingsley*, we found that "[i]t is not objectively unreasonable for a jail officer to hold a detainee's arm and push him, even awkwardly, through a jail hallway." *Id.* at 766.[8]

The Estate contends Mr. Rowell's death shows that Officer West's use of force was objectively unreasonable. But this factor is not dispositive. Officer West did not use "deadly force," which is "force that creates a substantial risk of causing death or serious bodily harm." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) (brackets and quotations omitted). Moreover, reliance on the plaintiff's injury alone would make a constitutional violation turn on the plaintiff's attributes that may be unknown to the defendant. *See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (noting that "[t]he degree of injury should not be dispositive" in excessive force

---

[8] The Estate argues that *Routt* is inapplicable because it arose on a motion to dismiss. But courts regularly address qualified immunity defenses at both the motion to dismiss and summary judgment stages. *See Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

15

cases because "[s]ome plaintiffs will be thicker-skinned than others"). The tragic outcome of the events in the hallway does not mean that Officer West's conduct was objectively unreasonable.

*   *   *   *

Because Officer West's conduct in the hallway was objectively reasonable, he did not commit a constitutional violation.[9] We therefore affirm the district court's grant of summary judgment to Officer West. *See Estate of Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017) ("We may decide which of [the qualified immunity] prongs to address first, and need not address both.").

2. **The Remaining Appellees**

The liability of the remaining Appellees depends on whether Officer West committed a constitutional violation. Because he did not, we affirm as to them.

a. *Officer Slay*

The Estate claims that Officer Slay is liable under § 1983 because he failed to intervene to prevent Officer West's use of excessive force in the hallway. But a plaintiff can maintain a claim for failure to intervene only when some other officer used excessive

---

[9] To the extent that the Estate argues that Officer West or Officer Slay committed a constitutional violation by failing to provide Mr. Rowell adequate medical attention after the fall, no such claim appears in the Third Amended Complaint, nor was any such claim argued to the district court. *See* App., Vol. I at 20-24. That claim is thus not part of this case. *See Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1202 (10th Cir. 2018) (finding a claim was not part of the litigation because it was absent from the operative pleading).

force.  *See Booker*, 745 F.3d at 422; *Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011).

b.  *Shift Supervisor Rosson*

The Estate claims that Shift Supervisor Rosson is liable under § 1983 in her individual capacity because, as Officer West's supervisor during the incident, she was deliberately indifferent to the possibility that he would use excessive force on Mr. Rowell.  But "[s]upervisors cannot be liable under § 1983 where there is no underlying violation of a constitutional right by a supervisee."  *Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019).

c.  *The County*

The Estate claims that the County is liable for Officer West's use of excessive force under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  But a municipality "may not be held liable where there was no underlying constitutional violation by any of its officers."  *Donahue v. Wihongi*, 948 F.3d 1177, 1199 (10th Cir. 2020) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

d.  *Sheriff Frazier*

The Estate claims that Sheriff Frazier is liable in his official capacity for Officer West's acts by promulgating a policy, practice, or custom that caused Officer West's use of excessive force, by failing adequately to train Jail staff, and by failing adequately to supervise Jail staff.  An official capacity claim under § 1983 is the same as a claim

17

against a municipality, and also requires an underlying constitutional violation. *See Cox v. Glanz*, 800 F.3d 1231, 1254-55 (10th Cir. 2015); *Donahue*, 948 F.3d at 1199.

\* \* \* \*

Because the claims under § 1983 against Officer Slay, Shift Supervisor Rosson, the County, and Sheriff Frazier cannot be maintained without an underlying constitutional violation committed by Officer West, we affirm the district court's grant of summary judgment to the remaining Appellees.

### III.  **CONCLUSION**

We affirm the district court's judgment.

18