FILED
United States Court of Appeals
Tenth Circuit

June 16, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ERIC MAGNE,

     Plaintiff - Appellant,

v.

RICK ALBERS, Clear Creek County
Sheriff, in his official capacity; MICHAEL
HANSEN, Clear Creek County Deputy
Sheriff, in his individual capacity,

     Defendants - Appellees.

No. 21-1256
(D.C. No. 1:18-CV-02741-JLK)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Eric Magne appeals the district court's grant of summary judgment to Clear

Creek County, Colorado Deputy Sheriff Michael Hansen and Sheriff Rick Albers on

his 42 U.S.C. § 1983 excessive force and inadequate training claims.  The district

court determined there was no constitutional violation and thus Hansen was entitled

to qualified immunity, while Albers was entitled to summary judgment.  We affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Magne's claims arise from injuries sustained as a pretrial detainee at the Clear Creek County Jail.  Shortly after midnight on October 29, 2016, he was arrested by Officer John Geiger on suspicion of driving under the influence of alcohol (DUI). Magne refused to take a roadside sobriety test, but a preliminary breath test indicated his blood alcohol content was 0.135 percent, exceeding Colorado's legal limit of 0.08 percent.  Magne was cooperative and was not handcuffed during the arrest.

At the jail, Magne was processed by Geiger and Hansen.  Magne told them he was taking nerve medication for a previous head injury and the medication made it difficult for him to control his saliva.  He asked to be placed in a holding cell, but once inside, he slammed the cell door shut several times.  Upon hearing the loud banging, Geiger approached Magne, wrenched his arm behind his back, and pinned him against the wall for nearly thirty seconds.  Hansen and three other deputies soon arrived.[1]

At approximately 2:00 a.m., Hansen escorted Magne to another room for fingerprinting.  The events that transpired next were captured on video, although no audio was recorded.  The parties agree that Magne was raising his hands in the air and that he began touching Hansen's right shoulder, specifically the patch on Hansen's sheriff's deputy uniform.  Magne says he noticed that spit from when he

---

[1] Geiger was indicted and pleaded guilty to criminal charges relating to the incident.  Magne initially brought an excessive force claim against Geiger and alleged Hansen failed to intervene, but he settled with Geiger and withdrew his failure-to-intervene claim against Hansen.

was speaking had landed on Hansen's shoulder and he was attempting to wipe it off. As Hansen was fingerprinting Magne's left hand, Magne reached his right hand from Hansen's right shoulder across Hansen's chest area. Hansen immediately executed an arm-bar takedown, grasping Magne's left arm and pushing down on the back of his neck as they swung around and down to the floor. During the takedown, Magne's head struck an adjacent metal doorframe. His head began to bleed profusely, but Hansen kept him pinned on the floor until he was handcuffed. After several minutes, Magne suffered an apparent seizure while waiting for an ambulance to arrive. He was transported to the hospital for treatment.

Magne later initiated this action, claiming Hansen used excessive force in violation of the Fourteenth Amendment and Albers was liable in his official capacity for inadequately training Hansen. The district court granted summary judgment to Hansen and Albers, concluding that Magne failed to show Hansen committed a constitutional violation and thus Hansen was entitled to qualified immunity. The court also determined that absent an underlying constitutional violation Albers could not be liable and thus summary judgment was proper. Magne now appeals.

II

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Rowell v. Bd. of Cnty. Comm'rs*, 978 F.3d 1165, 1170 (10th Cir. 2020) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

3

Civ. P. 56(a).  Although "we view the evidence and draw inferences in the manner most favorable to the non-moving party[,] . . . the non-moving party must nonetheless establish facts such that a reasonable jury could find in his favor."  *Lindsey v. Hyler*, 918 F.3d 1109, 1113 (10th Cir. 2019).  "Unsubstantiated allegations will not suffice." *Id.*  And "we cannot ignore clear, contrary video evidence in the record depicting the events as they occurred."  *Rowell*, 978 F.3d at 1171 (internal quotation marks omitted).

"A defendant's motion for summary judgment based on qualified immunity imposes on the plaintiff the burden of showing both (1) a violation of a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation."  *Id.* (internal quotation marks omitted).  We may, in our "sound discretion," determine which of the two prongs to address first as appropriate under the circumstances.  *Id.* (internal quotation marks omitted).

   *A.  Excessive Force—Deputy Hansen*

Magne claims Hansen violated the Fourteenth Amendment by using excessive force in executing the takedown.  "A defendant violates the Fourteenth Amendment by purposely or knowingly using force against a pretrial detainee that is 'objectively unreasonable.'"  *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)).  The objective reasonableness of an officer's conduct "turns on the facts and circumstances of each particular case."  *Kingsley*, 576 U.S. at 397 (internal quotation marks omitted).  It is evaluated "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of

4

hindsight." *Id.* We "also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (brackets and internal quotation marks omitted). "[U]se of an objective standard . . . protects an officer who acts in good faith" and is "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 399 (internal quotation marks omitted). In evaluating whether an officer acted reasonably or unreasonably, we may consider the following non-exclusive factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397.

Our analysis of the pertinent considerations confirms Hansen acted with objective reasonableness in executing the takedown. First, the need for the use of force was commensurate with the amount of force used. Magne had been arrested for a DUI and had grown increasingly disruptive after being placed in the holding cell, where he repeatedly slammed the cell door. When Hansen escorted him to be fingerprinted, Magne held his hands in the air and continued to raise and lower his hands as Hansen attempted to fingerprint him. Magne then inexplicably persisted in touching Hansen for approximately twelve seconds, twice tracing the outline of the

patch on Hansen's shoulder with his index finger, wiping the patch with his hand, briefly pausing, and then repeatedly rubbing the patch with his hand until he reached across Hansen's chest near Hansen's neck. At that moment, Hansen executed the takedown. Magne denies reaching near Hansen's neck, and he faults the district court for failing to credit his version of the events, but the video "blatantly contradicts" him. *Emmett v. Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020) (brackets and internal quotation marks omitted). Indeed, the video clearly shows that Magne reached across Hansen's chest and touched Hanson's uniform (where a pen was clipped to his collar, visible in earlier footage from another angle, *see* Aplt. App., video 2 at 1:57:17-25), just below his neck, *see id.*, video 1 at 2:07:10; *see also id.*, video 2 at 2:07:29 (showing Magne's thumb and index finger directed toward Hansen's throat as Hansen steps back to execute the takedown). Given the potential threat Magne posed by doing so, the need for Hansen's use of force was proportionate to the force he used. This factor weighs heavily in Hansen's favor.

The second and third factors—the extent of Magne's injuries and any attempt to temper the amount of force used—could suggest Hansen acted unreasonably. Magne suffered a severe laceration to his head, and he claims he sustained a traumatic brain injury, though he cites no evidence to support his claim. And Hansen made no attempt to limit the amount of force he used. However, Hansen reacted in the split second when Magne reached across his chest near his neck, and when they spun around to the floor during the takedown, Magne inadvertently hit his head on

6

the door frame.  We agree with the district court that these factors weigh in Magne's

favor, if only slightly.

The fourth factor, the severity of the security problem, weighs in Hansen's

favor.  Magne was impaired, if not still intoxicated, and he had grown increasingly

disruptive.  While he was unhandcuffed, he repeatedly touched Hansen for far longer

than necessary to wipe away any spit that may have landed on Hansen's shoulder.

And reaching near Hansen's neck and touching his uniform posed an obvious and

serious threat to Hansen's personal security.  There also was a potential security

threat to the jail posed by Magne, who was entirely unrestrained.

The fifth factor, which evaluates the threat reasonably perceived by the officer,

also suggests Hansen acted reasonably.  Hansen testified that Magne's conduct was

"assaultive with the intent of causing bodily harm."  Aplt. App., vol. 1 at 147.  The

video confirms that Magne touched Hansen's uniform near his chest, just below his

neck.  This confirms that Hansen's perception was reasonable, and accordingly, this

factor weighs in his favor.

Lastly, the sixth factor, whether Magne was actively resisting, is only

marginally applicable.  The district court determined that Magne was resisting, but he

was not retracting his arm or otherwise refusing to be fingerprinted, although he was

acting in a distracting and disruptive manner.  *Cf. Rowell*, 978 F.3d at 1173

(distinguishing between uncooperative behavior and active resistance).  Moreover,

although Magne denies that Hansen told Magne to stop touching him, neither was

7

there any need for him to touch Hansen for as long or in the manner that he did. This factor does not weigh decisively in favor of either Magne or Hansen.

On balance, the relevant factors weigh in Hansen's favor, and we therefore conclude that his use of the takedown was objectively reasonable. Absent a constitutional violation, we need not consider the clearly-established prong of the qualified immunity test. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Magne fails to show any reversible error by the district court in granting summary judgment for Hansen based on qualified immunity.

*B. Inadequate Training—Sheriff Albers*

Magne's inadequate-training claim against Albers in his official capacity as Clear Creek County Sheriff is effectively a municipal liability claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). However, "a municipality is responsible only for its own illegal acts. It may not be held liable where there was no underlying constitutional violation by any of its officers." *Donahue v. Wihongi*, 948 F.3d 1177, 1199 (10th Cir. 2020) (internal quotation marks omitted). Having failed to establish an underlying constitutional violation, Magne cannot hold Albers liable for inadequate training. *See Hinton*, 997 F.2d at 782. He therefore fails to show any reversible error in the district court's grant of summary judgment to Albers.

III

The district court's judgment is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge

8