[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-10875

Non-Argument Calendar

_____

ERIC WATKINS,

Plaintiff-Appellant,

*versus*

SERGEANT M. BIGWOOD,
OFFICER T. YOPPS,
#353,
OFFICER SAMUEL RAMOS,
CITY OF LAUDERHILL,

Defendants-Appellees,

TANIKA BECKFORD, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-63035-AMC

_____

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Eric Watkins, proceeding *pro se*, appeals the district court's grant of summary judgment on his 42 U.S.C. § 1983 complaint against the City of Lauderhill and three of its police officers. After careful review, we conclude that the individual officers are entitled to qualified immunity from Watkins's claims of false arrest and free-speech retaliation, and that Watkins has not established a basis for municipal liability. Accordingly, we affirm.

## I.

On the morning of December 15, 2014, Watkins arrived at John Mullin Park in Lauderhill, Florida, and began his usual routine. He was living out of his car at the time, and he visited the park every day to make breakfast and work on his legal cases. While he did those things, he would regularly and repeatedly sing the song "Boom Bye Bye," by reggae artist Buju Banton, an "anti-gay" song with lyrics describing if not advocating violence against gay people, including shooting them in the head.

As Watkins sang the anti-gay song by his car on December 15, two joggers—Tanika Beckford and Jermaine Jackson—went past on the park's walkway, about 60 feet from his location. Jackson stopped and asked if Watkins was speaking to him. Watkins said "no" and that he was singing a song, and the joggers went on their way. Watkins continued to sing the same song as they came around a second time. Jackson stopped again and began walking toward Watkins and cursing at him. Watkins continued singing. Jackson then attempted to physically attack Watkins but was restrained by Beckford. Watkins continued singing as the two joggers walked away, still cursing at him. Beckford later called the police.

Three police officers—Sergeant (now Lieutenant) Michael Bigwood and Officers Samuel Ramos and Thomas Yopps—responded to a 911 dispatch to Mullins Park regarding a report of a man shouting anti-gay slurs and making threats toward joggers in the park. Bigwood and Ramos spoke with Beckford, Jackson, and Watkins. Yopps was present as backup but did not participate in the questioning or the decision to invoke the Baker Act.

Beckford and Jackson reported to the officers that Watkins began yelling about shooting gay men in the head as they jogged passed him. Jackson said that, as he jogged past, Watkins's yelling grew louder and he appeared unstable. Beckford said she saw Watkins make a stabbing motion in the air with a knife as he yelled at them. Both Beckford and Jackson stated that they feared for their safety.

When questioned by Ramos, Watkins admitted singing "Boom Bye Bye." Ramos testified that, after he thanked Watkins for his cooperation, Watkins "reacted angrily," which seemed "irrational an[d] unreasonable" to Ramos. Bigwood then questioned Watkins, who admitted that he possessed two knives in his car, but he denied having a knife in his hand or waving it around. As Watkins spoke with Bigwood, Ramos observed Watkins's "behavior vary from calm to angry, without warning or explanation." Bigwood likewise made this same observation. For his part, Watkins called these statements "lies" and said that he "reacted normal" and was "coherent" and "calm and collected" while speaking with the officers. As we must at summary judgment, we credit Watkins's account of his demeanor during this interaction.

After Watkins refused Bigwood's offer to have a voluntary mental-health examination, Watkins was handcuffed and transferred to the Florida Medical Center for an involuntary mental health evaluation under Florida's Baker Act, Fla. Stat. § 394.463.[1] Watkins remained at the Florida Medical Center until his release on December 19, within the 72 hours permitted under the Baker Act.

---

[1] Ramos and Bigwood testified that Ramos made the determination to involuntarily commit Watkins. But according to Watkins, it was actually Bigwood who ordered his commitment. Regardless, this factual dispute is not material to the outcome because our probable-cause inquiry is one of objective reasonableness under the totality of the circumstances. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Watkins later submitted a complaint against Ramos and Bigwood arising out of the events on December 15, 2014, but the Lauderhill Police Department's Professional Standards Unit found that the officers acted in an "appropriate and justified manner based upon their training and experience."

## II.

In December 2018, Watkins filed a *pro se* 42 U.S.C. § 1983 complaint against the City of Lauderhill and officers Bigwood, Ramos, and Yopps, alleging claims for violations of the First and Fourth Amendments. The district court initially dismissed the complaint *sua sponte* for failure to state a claim, but we vacated that ruling on appeal, holding that Watkins stated plausible claims for false arrest and free-speech retaliation.[2] *Watkins v. Bigwood*, 797 F. App'x 438, 443–44 (11th Cir. 2019).

Back on remand, and after a period of discovery, the defendants moved for summary judgment. The individual officers argued that they were entitled to qualified immunity on all claims against them because they had at least arguable probable cause to detain Watkins under the Baker Act. The City maintained that Watkins failed to establish the elements of municipal liability. Watkins responded in opposition.

---

[2] We affirmed the dismissal of Watkins's defamation claims against Beckford and Jackson as barred by the statute of limitations.

The district court granted summary judgment for the defendants. The court found that the individual officers were entitled to qualified immunity because they were performing discretionary functions and did not violate a constitutional right that was "clearly established" at the time of the incident. In the court's view, arguable probable cause existed to seize Watkins for an involuntary mental-health examination under the Baker Act. The court noted that, according to witness reports, Watkins was engaging in threatening and intimidating behavior towards passing joggers while holding a knife. The court also reasoned that it was not clearly established that "detaining Watkins for an involuntary health examination based in part on [his] singing of a song advocating violence against homosexuals violated" his First Amendment rights. Finally, the court determined that Watkins failed to show a basis for municipal liability under § 1983. Watkins now appeals.

### III.

We review *de novo* the district court's grant of summary judgment, taking the record in the light most favorable to the non-moving party—here, Watkins. *Roy v. Ivy*, 53 F.4th 1338, 1346 (11th Cir. 2022). Summary judgment is appropriate when the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists unless a "reasonable jury could return a verdict in favor of the nonmoving party." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022)

(quotation marks omitted). We liberally construe the filings of *pro se* parties. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

Officers are entitled to qualified immunity for actions within the scope of their discretionary authority so long as they do not violate clearly established constitutional rights. *Baxter*, 54 F.4th at 1255–56. Once the immunity defense is properly raised, the plaintiff bears the burden of showing that the official violated a constitutional right that was clearly established at the time. *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

## A. Fourth Amendment Unreasonable Seizure Claim

The Fourth Amendment protects people against unreasonable seizures. *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011). To be reasonable, a custodial seizure must be supported by probable cause. *Id.*; *see Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022) ("Mental-health seizures are reasonable under the Fourth Amendment when the officer has probable cause to believe that the seized person is a danger to himself or to others."). Even if probable cause is lacking, officers are entitled to qualified immunity if they have *arguable* probable cause. *Carter v. Butts Cnty., Ga.*, 821 F.3d 1310, 1319 (11th Cir. 2016).

We "look to the totality of the circumstances to determine whether arguable probable cause existed to detain [Watkins] under Florida's Baker Act." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1126 (11th Cir. 2021). Florida's Baker Act permits police officers to take a "person who appears to meet the criteria for involuntary examination into custody" and deliver the person to a mental-health facility. Fla. Stat. § 394.463(2)(a)2. As relevant here, the criteria are met if there is "reason to believe that the person has a mental illness and because of his . . . mental illness . . . [t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself . . . or others in the near future, as evidenced by recent behavior." Fla. Stat. § 394.463(1). Thus, "[a]rguable probable cause exists if a reasonable officer, knowing the information [the officers] possessed, could have believed that probable cause existed to involuntarily commit [Watkins]." *Khoury*, 4 F.4th at 1126.

Relevant recent behavior may include "causing, attempting, or threatening to do [serious bodily] harm." *D.F. v. State*, 248 So. 3d 1232, 1234 (Fla. 5th DCA 2018). That an individual might need treatment for a mental illness alone is insufficient to justify involuntary commitment. *Id.*; *Williams v. State*, 522 So. 2d 983, 984 (Fla. 1st DCA 1988). So too are "[v]ague notions about what a person might do—for example, a belief about *some* likelihood that without treatment a person *might* cause *some* type of harm at *some* point." *Khoury*, 4 F.th at 1126.

Here, the district court did not err in granting summary judgment to the officers. Knowing what the officers knew, a reasonable officer "could have believed that probable cause existed to involuntarily commit [Watkins]." *Khoury*, 4 F.4th 1126.

The record, viewed in the light most favorable to Watkins, shows that officers responded to a 911 dispatch to Mullins Park regarding a report of a man shouting anti-gay slurs and making threats towards joggers in the park. When they arrived, the officers spoke with Watkins and the complaining joggers, Beckford and Jackson. While Watkins said he was merely singing a song and denied holding a knife or acting aggressive—conduct insufficient to give rise to arguable probable cause, *see Watkins*, 797 F. App'x at 443—the joggers presented a much different picture. Jackson reported that Watkins, without prompting, began yelling about shooting gay men in the head as they jogged passed him, and that his yelling grew louder and he appeared unstable. Beckford added that Watkins made a stabbing motion in the air with a knife as he yelled at them. Both Beckford and Jackson stated that they feared for their safety. Watkins also confirmed that he possessed two knives in his car.

Based on the witness reports of Watkins engaging in threatening and intimidating behavior towards passing joggers while holding a knife, plus Watkins's own confirmation that he possessed two knives, a reasonable officer possessing the same knowledge as the defendants could have believed that Watkins appeared to meet

the criteria for involuntary examination.[3]  *See Khoury*, 4 F.4th at 1126; *D.F.*, 248 So. 3d at 1234 (relevant recent behavior for Baker Act commitment decisions includes "threatening to do [serious bodily] harm").  Plus, since this behavior was unprompted, according to the witnesses, the officers reasonably could have believed that Watkins's distance from the joggers—60 feet—did not lessen the potential threat he posed, since he could have directed his ire towards a closer target.  And although Watkins disputed the joggers' accounts, and even assuming the joggers were lying, officers may rely on alleged victims' statements as support for probable cause, *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998), and they are not "required to sift through conflicting evidence or explanations or resolve issues of credibility when assessing probable cause," *Huebner v. Bradshaw*, 935 F.3d 1183, 1188 (11th Cir. 2019) (quotation marks omitted).  When evaluating qualified immunity for a Fourth Amendment claim, what matters is "the perspective of a reasonable officer on the scene," not necessarily what the actual facts may have been.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

---

[3] This conclusion does not contravene our prior decision on appeal in this case.  That appeal arose in the context of a motion to dismiss in which the factual picture was limited to Watkins's singing of the anti-gay song in a non-aggressive and non-hostile manner, without any other intimidating conduct.  *Watkins*, 797 F. App'x at 442–43.  The witness statements were not before us, and we expressly declined to make any "determination about the ultimate merit of Plaintiff's claims or whether Defendant Officers may be entitled to a judgment in their favor on a fuller record."  *Id.* at 444.

Because the officers had arguable probable cause to take Watkins into custody under the Baker Act, the district court did not err in finding they were entitled to qualified immunity from Watkins's Fourth Amendment claim.

## B.  First Amendment Retaliation Claim

To state a claim for retaliation under the First Amendment, a plaintiff must show that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected his protected speech; and (3) a causal connection exists between the adverse conduct and the protected speech.  *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

In § 1983 First Amendment retaliatory-arrest cases, "the presence of probable cause will typically invalidate a First Amendment retaliatory arrest claim."  *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1294–95 (11th Cir. 2019).  That's true even if the plaintiff engaged in protected speech, which is "often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest."  *Id.* at 1295–96.  A narrow exception to the requirement for a plaintiff to establish the absence of probable cause applies "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019).

Because the officers here had arguable probable cause to arrest Watkins under the Baker Act, we likewise conclude that they

are entitled to qualified immunity from Watkins's First Amendment retaliation claim. *See DeMartini*, 942 F.3d at 1294–95. There's no question that merely singing a song in public—even one with hateful and violent lyrics—is generally entitled to First Amendment protection, so the song alone could not justify an arrest or detention. *See Watkins*, 797 F. App'x at 434. But for the reasons we just explained, the officers had reason to believe—based on evidence not considered in the prior appeal—that Watkins's conduct went beyond mere singing and included engaging in threatening and intimidating behavior seemingly directed at two specific joggers. That Watkins's protected speech played a role in the Baker Act determination does not alone establish retaliation because "protected speech is often a wholly legitimate consideration for officers when deciding whether to make an arrest." *See DeMartini*, 942 F.3d at 1295–96 (quotation marks omitted). Nor do the circumstances here otherwise fall into an exception to the "no-probable-cause" rule. *See id.* at 1294–96.

For these reasons, we affirm the grant of qualified immunity to the individual officers on Watkins's § 1983 First Amendment retaliation claim.

## C. *Municipal Liability Claim*

Finally, we consider Watkins's § 1983 municipal liability claim.[4] In general, a municipality is not liable under § 1983 for

---

[4] Watkins's claims against the officers in their official capacities are treated as claims against the City. *See Brown v. Neumann*, 188 F.3d 1289, 1290 (11th

constitutional injuries inflicted by its employees unless the injury was caused by a custom or policy of the municipality. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "Only those officials who have final policymaking authority may render the municipality liable under § 1983." *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996).

Watkins's theory is that the individual officers were "final policymakers" for purposes of imposing municipal liability. We disagree. Under Florida law, police chiefs have final policymaking authority in their respective municipalities for law enforcement matters. *Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005). "[T]he mere delegation of authority to a subordinate to exercise discretion"—to make a Baker Act determination, for example—"is not sufficient to give the subordinate policymaking authority." *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989). "Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." *Id.* And here, the record shows that the officers' Baker Act determination was constrained by statute and subject to administrative review. We see no basis in the record to conclude that the officers were final policymakers with respect to Baker Act determinations for the purpose of imposing liability on the City.

---

Cir. 1999) ("[A] suit against a governmental official in his official capacity is deemed a suit against the entity that he represents.").

In sum, and for the foregoing reasons, we affirm the district court's grant of summary judgment against Watkins.

**AFFIRMED.**