**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2816
_____

ZACHARY SPADA,
                                        Appellant
v.

CAPTAIN RICHARD HOUGHTON; CO SEAN BOLT; CO ALBERT WOOD
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1-20-cv-00223)
District Judge:  Honorable Susan Paradise Baxter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 3, 2023

Before: HARDIMAN, PORTER, and FREEMAN, <u>Circuit Judges</u>

(Opinion filed: November 14, 2024)
_____

OPINION[*]
_____

**PER CURIAM**

Zachary Spada, a state inmate proceeding pro se, appeals from the District Court's

order granting the defendants' motion for summary judgment in his civil rights action.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

For the following reasons, we will vacate in part, affirm in part, and remand for further proceedings.

**I.**

Beginning on September 1, 2018, after his arrest on state criminal charges, Spada was held in the Erie County Prison ("ECP") as a pretrial detainee. Spada suffers from mental illnesses requiring medication, including bipolar disorder and antisocial personality disorder. At the time of his arrest and detention, he had been off his medication since approximately May 2018. D.Ct. ECF No. 54-1 at 3-4. According to Spada, when he is not taking his medication, he frequently becomes "manic, having racing thoughts, inability to sleep, impulsiveness, [and] restlessness." Id. at 4. From his first day at ECP, Spada engaged in numerous instances of misconduct, including, but not limited to, biting officers, flooding his cell, smearing feces on walls, obstructing the camera in his cell, and screaming.

On multiple occasions, corrections officers deployed oleoresin capsicum ("OC") spray against Spada when he engaged in misconduct. While Spada does not challenge every use of OC spray, he asserts that the use of OC spray on six distinct occasions constituted the use of excessive force in violation of the Fourteenth Amendment. See D.Ct. ECF Nos. 12 and 47.[1] At the close of discovery, the defendants moved for

---

[1] The District Court dismissed Spada's claims against all of the defendants except Officers Houghton, Bolt, and Wood. Spada does not challenge the dismissal of the other defendants.

summary judgment. A Magistrate Judge recommended that the motion be granted. In so doing, he acknowledged the existence of factual disputes, but concluded that "no jury could find the use of bursts of OC spray followed by decontamination to be exaggerated responses to the almost nonstop threat to order that Spada presented." D.Ct. ECF No. 69 at 9. Over Spada's objections, the District Court granted the motion for summary judgment and adopted the Report and Recommendation as the opinion of the Court. D.Ct. ECF No. 78. Spada filed a timely notice of appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review over a district court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the evidence, "all justifiable inferences are to be drawn in … favor" of the nonmoving party. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" when ruling on a motion for summary judgment. Id.

**III.**

As Spada was a pretrial detainee at the time of the challenged actions, his claims are governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)). A pretrial detainee alleging excessive force "must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. at 396-97. As such, Spada "can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id. at 398.

There is no dispute that the officers acted purposely or knowingly. The parties disagree as to whether the use of OC spray under the challenged circumstances was objectively unreasonable and therefore excessive. Whether a particular use of force was objectively unreasonable "turns on the 'facts and circumstances of each particular case,'" and should be determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. at 397 (quoting Graham, 490 U.S. at 396). Factors to consider in analyzing reasonableness include, but are not limited to: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity

4

of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.  Id.[2]

Spada argues on appeal that issues of fact, including whether he posed a threat and whether he was ordered to stop his behavior, precluded summary judgment.  He also contends that the District Court failed to view the evidence in a light most favorable to him.  We agree with the District Court that summary judgment in favor of the defendants was appropriate as to the second incident that occurred on October 29, 2018, and the incident on November 2, 2018, as no reasonable jury could find that the use of force on those occasions was objectively unreasonable.

Summary judgment was appropriate as to the second use of OC spray against Spada on October 29, 2018.  In that instance, it is undisputed that Spada urinated into his paper gown, creating a "urine bomb" that could have been thrown at officers.  Video of the incident shows that Officer Houghton told Spada multiple times that Spada had a "weapon" and to "dump it out" before he deployed OC spray into the cell.  See D.Ct. ECF No. 57-72.  Even if, as Spada asserts, he was unable to understand Houghton's

---

[2] These are often referred to as the Kingsley factors.  The factors "illustrate the types of objective circumstances potentially relevant to a determination of excessive force." Kingsley, 576 U.S. at 397.  Spada argues on appeal that the grant of summary judgment should be vacated because the District Court failed to consider each of the Kingsley factors.  Although a more particularized analysis of the Kingsley factors by the District Court might have been helpful, the District Court's decision reflects that it considered them throughout its analysis.  Further, the findings made by the District Court were sufficient to provide a clear understanding of the basis for the decision.

orders and he dropped the urine-filled gown just before Houghton deployed the spray, no reasonable jury could find that the use of OC spray was objectively unreasonable. The Kingsley factors, including the severity of the security problem created by the weaponization of bodily fluids, the threat reasonably perceived by the officer, and the efforts to limit the need for force through verbal commands, support this conclusion.

On November 2, 2018, Spada smeared feces on the walls and windows of his cell. According to the defendants, Spada was sprayed with OC after refusing orders to be handcuffed so he could be removed from his cell. Spada denies that anyone ordered him to "cuff up." He says that Officer Wood just "opened the tray slot and [] sprayed [him] with OC spray for about ten seconds." D.Ct. ECF No. 54-1 at 14. Even taking Spada's version of events as true, we agree with the District Court that no reasonable jury could find the "use of OC spray to manage the ongoing threat posed by Spada's potential use of bodily waste as a weapon" objectively unreasonable. D.Ct. ECF No. 69 at 10. The Kingsley factors again support this conclusion.

Spada also argues on appeal that he was not a nonstop threat and that his misconduct occurred when he was suffering due to his mental illness. He asserted in his affidavit and in his objections to the Magistrate Judge's Report that his misconduct was the result of incorrect dosages of his mental health medication. However, Spada did not develop an argument in his brief in opposition to the motion for summary judgment that the use of force was objectively unreasonable due to his mental illness. To the extent Spada has not forfeited such an argument, see Barna v. Bd. of Sch. Dirs. of Panther

6

Valley Sch. Dist., 877 F.3d 136, 146-47 (3d Cir. 2017), he did not present sufficient evidence for a jury to conclude that he was unable to comply with the orders given by the officers. See Thomas v. Bryant, 614 F.3d 1288, 1312, 1317 (11th Cir. 2010) (holding that spraying an inmate with chemical agents when he was unable to comply with orders due to mental illness violated the Constitution).

We further conclude, however, that summary judgment was not warranted as to Spada's remaining excessive force claims. On the evening of October 3, Spada was alone in a cell outfitted with an observation camera. D.Ct. ECF No. 54-52 at 2. He was screaming and yelling but was not ordered to stop. D.Ct. ECF No. 54-1 at 9-10. He denies the defendants' assertions that he was banging his cell gate, climbing on top of a desk, or attempting to tamper with a wall light fixture. D.Ct. ECF No. 58 at 9-11. Officer Houghton deployed OC spray without warning. D.Ct. ECF No. 58 at 9-11.

Taking Spada's version of events as accurate, a reasonable jury could find that the use of OC spray was objectively unreasonable. Although he had bitten an officer that morning,[3] he did not pose a danger to anyone in the evening when he was yelling in his cell. And the officer did not attempt to limit the use of force with verbal orders.

---

[3] The District Court referred to Spada's other misconduct reports during the time period at issue. Spada argues on appeal that "[t]he District Court abused its discretion in misapplication of Fed. R. Evid. 404(b) because the prior bad acts … were used for the sole purpose of showing that Mr. Spada has a propensity and disposition for certain activity." 3d Cir. ECF No. 19 at 18. Although the defendants (now Appellees) argue that Spada failed to present this argument below, he raised it in his brief in support of his objections to the Magistrate Judge's report. Nonetheless, the argument lacks merit. As

7

For similar reasons, a reasonable jury could find that the first use of OC spray against Spada on October 29, 2018 was objectively unreasonable. Leading up to that incident, Spada was singing and yelling in his cell, and no officer ordered him to stop. He ripped his paper gown into pieces and started putting them in his cell toilet, but he removed them when ordered to do so. He denies defendants' assertion that he was hitting his sink. D.Ct. ECF No. 54-1 at 12. He had stopped singing and yelling and was laying down on his bunk when Officer Bolt sprayed him. D.Ct. ECF No. 58 at 18.[4] Viewing the evidence in his favor, he had ceased all misconduct and did not pose a danger to anyone when he was sprayed.

We also agree with Spada to the extent he contends that genuine issues of material fact precluded summary judgment on his claim that the deployment of OC spray on September 4, 2018, was excessive. There is no dispute that Spada was banging on his

___

noted by the District Court, "any jury evaluating the use of force by Prison staff would have to consider the information available to them about what problems or potential problems Spada posed." D.Ct. ECF No. 69 at 5. Further, as noted by the defendants, the misconduct reports were not submitted to show that he acted in accordance with his character, but rather to provide context for purposes of analyzing the reasonableness of the officers' actions.

[4] Although Officer Bolt did not warn Spada that he would use OC spray, D.Ct. ECF No. 58 at 19, a video captured a meeting Spada had with Deputy Warden Holman earlier that morning. While we do not condone certain demeaning language used by the Deputy Warden, Spada was clearly advised that OC spray would be deployed without warning in response to future instances of misconduct, including yelling and screaming. D.Ct. ECF No. 54-69. Nonetheless, that warning does not render all subsequent uses of force against Spada objectively reasonable.

8

cell door, and that he stopped when ordered to do so by Officer Wood. It is disputed whether Spada resumed that behavior prior to being sprayed with OC. Spada testifed that he did not resume banging and that, after telling Wood that he did not have any thoughts of self-harm, he "turned around to go back to [his] bunk and [Wood] used OC spray when [his] back was turned." D.Ct. ECF No. 54-1 at 8. Taking Spada's version of events as true, a reasonable jury could find that the use of OC spray was objectively unreasonable. The Kingsley factors, including the need for force and the threat perceived by the officer, support this conclusion to the extent that Spada had already complied with orders to cease his behavior. See Jacobs v. Cumberland Cnty., 8 F.4th 187, 195-96 (3d Cir. 2021) (addressing qualified immunity and holding that a jury could conclude that force was objectively unreasonable when used after a disturbance had ended and inmate was subdued).[5]

As to the events of October 8, 2018, it is undisputed that Officer Houghton deployed OC spray in response to Spada covering his cell camera with medical cream. Spada asserted that Houghton sprayed him without warning and that he was "not actively resisting because at the time [he] had been given no order with which to comply." D.Ct.

---

[5] The District Court noted that Spada's assertion that he was sprayed in the back of the head was inconsistent with his statement that his eyes burned and he had a mucus discharge from the nose and mouth. D.Ct. ECF No. 69 at 6. We discern no inconsistency. It is not clear that the OC could not have gotten into Spada's eyes and airway if he was sprayed in the back of the head. Further, Spada was captured on video after the incident stating that he was sprayed in the back of the head. See D.Ct. ECF No. 54-23.

ECF No. 58 at 15, 17. Houghton's verified answers to interrogatories averred that Spada had been warned about covering his cell camera on October 3 and 4, 2018, including an "explicit warning" by him that OC spray would be used to "deter similar conduct." D.Ct. ECF No. 54-58.[6] Spada does not dispute this warning but contends only that Houghton did not repeat the warning before October 8. D.Ct. ECF No. 59 at 11.

Assuming that Houghton did warn Spada that future instances of covering his camera could result in the deployment of OC spray, a reasonable jury could conclude that the use of OC spray here was not objectively reasonable. Although covering a camera poses a security problem, there was no apparent threat of harm or disturbance and Spada was returning to his bunk with his back turned. So A jury could conclude that the deployment of OC spray was "excessive in relation to the purpose," Kingsley, 576 U.S. at 398, or done for punitive purposes, see Bell v. Wolfish, 441 U.S. 520, 539 n. 20 (1979) ("Retribution and deterrence are not legitimate nonpunitive governmental objectives.").

Finally, the defendants urge us to affirm the District Court's decision on qualified immunity grounds. The District Court did not decide this issue. However, the presence of disputed facts as to whether Spada's misconduct had ended when OC spray was deployed, and whether OC spray was deployed for punitive purposes or to deter Spada's conduct, are jury questions precluding a finding of qualified immunity. See Jacobs, 8

---

[6] That warning is not documented in any misconduct reports preceding the incident. It is documented in writing after the fact.

10

F.4th at 195-97 (collecting cases and holding officer not entitled to qualified immunity for 2015 incident where force was used after threat had ended).

Accordingly, we will affirm in part and vacate in part the judgment of the District Court. This matter is remanded for further proceedings consistent with this opinion.

11