*Tennyson v. Francemone*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of November, two thousand twenty-five.

PRESENT:

> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> *Circuit Judges*.

_____

EVELYN TENNYSON,

> *Plaintiff-Appellant*,

v.                                                    No. 24-2126

KELSEY FRANCEMONE,

> *Defendant-Appellee*,

THE CITY OF SYRACUSE,
KENTON BUCKNER, a.k.a. FRANK FOWLER, in his official capacity as Syracuse Police Chief,

        *Defendants.*[*]

_____

| | |
|---|---|
| **For Plaintiff-Appellant:** | FRED LICHTMACHER, The Law Office of Fred Lichtmacher PC, New York, NY. |
| **For Defendant-Appellee:** | JOHN G. POWERS (Mary L. D'Agostino, Ryan M. Poplawski, *on the brief*), Hancock Estabrook, LLP, Syracuse, NY; Todd M. Long, Office of the Corporation Counsel, *for* the City of Syracuse, Syracuse, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Brenda K. Sannes, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 12, 2024 judgment of the district court is **AFFIRMED**.

Evelyn Tennyson appeals from the district court's grant of summary judgment in favor of Defendant Kelsey Francemone, a Syracuse police officer who allegedly shot and injured Tennyson during a shootout with third parties in 2016.

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review *de novo* a district court's grant of summary judgment. *Windward Bora, LLC v. Wilmington Sav. Fund Soc'y, FSB*, 982 F.3d 139, 141 (2d Cir. 2020). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Galloway v. County of Nassau*, 141 F.4th 417, 422–23 (2d Cir. 2025) (quoting Fed. R. Civ. P. 56(a)). In determining whether a party is entitled to summary judgment, we "constru[e] the evidence in the light most favorable to the non-movant." *Alberty v. Hunter*, 144 F.4th 408, 414 (2d Cir. 2025) (internal quotation marks omitted).

Tennyson claims that Francemone violated her right to substantive due process under the Fourteenth Amendment when she "reckless[ly] and indiscriminate[ly] discharge[d] her firearm into a crowded parking lot without warning" during a gunfight that erupted at a crowded outdoor party. Appellant Br. at 1. Even assuming that the shot that wounded Tennyson was fired by Francemone – a fact that remains in dispute – we agree with the district court that Tennyson's Fourteenth Amendment claim fails as a matter of law.

3

The Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), "provides the appropriate standard for *all* excessive force claims brought under the Fourteenth Amendment." *Edrei v. Maguire*, 892 F.3d 525, 537 (2d Cir. 2018) (emphasis added). The "central inquiry" is whether, on the record before us, "the government action was rationally related to a legitimate government objective." *Id.* at 536. Force that is "deliberately used" by a government actor and that is "objectively unreasonable" violates this standard. *Kingsley*, 576 U.S. at 396–97. We have "long relied" on the four factors identified in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), to assess whether the government's use of force was objectively unreasonable. And as this Court explained in *Edrei*, "[t]he first three factors identified in *Glick* . . . parallel the six non-exhaustive factors identified in *Kingsley*." 892 F.3d at 537. Those factors are "the need for force, the relationship between the need and the degree of force used, and the extent of the injury." *Id.* All three of those factors support the district court's grant of summary judgment here.

*First*, in sharp contrast to the situation at issue in *Edrei*, which involved "non-violent" demonstrators, *id.*, the undisputed record here reflects that Francemone responded to a "chaotic" scene in which gunmen fired

"approximately fifteen gunshots in rapid succession" in a crowded public area. J. App'x at 1063–64, 1067 (internal quotation marks omitted). The situation faced by Francemone presented a "need for force" that was far more compelling than was the case in *Edrei*, where at most "someone may have thrown a glass bottle." *Edrei*, 892 F.3d at 537. Unlike the "victimless incident" in *Edrei*, where "[t]he most significant problem confronting law enforcement appears to have been traffic disruption caused by protesters walking in the street," *id.*, Tennyson concedes that "gunfire erupted" at the party and "caus[ed] partygoers to flee the courtyard" en masse, Appellant Br. at 2. We considered the traffic disruptions in *Edrei* to be "the sort of public safety risk common to large public demonstrations," and "not necessarily an imminent threat warranting a significant use of force." *Edrei*, 892 F.3d at 537. Here, by contrast, there was not just an "imminent threat," but a live one. *Id.* "Given 'the severity of the security problem at issue,'" we agree that Francemone was "justified in using nontrivial amounts of force" to restore order. *Frost v. N.Y. Police Dep't*, 980 F.3d 231, 256 (2020) (quoting *Kingsley*, 576 U.S. at 397).

*Second*, Francemone's use of force was proportional to the threat confronted. Again, this case is readily distinguishable from *Edrei*, where the police procured and deployed a device specifically designed "to cause pain/hearing damage"

5

indiscriminately against "non-violent" crowds who at most were "blocking traffic." *Edrei*, 892 F.3d at 538. Here, Francemone fired five rounds in the direction of active shooters, J. App'x at 1088, who posed an immediate threat to the lives and safety of dozens of innocent bystanders. *See* Appellant Br. at 1–2 (describing how "gunfire erupted" at "a Father's Day barbecue" with "more than 200 people gathered," thus "causing partygoers to flee the courtyard"); *id.* at 8 ("Francemone encountered an ongoing gunfight involving multiple shooters, which posed an imminent threat to public safety. . . ."). Even Tennyson's own crime-scene reconstruction expert concluded that Francemone was "directing her fire at locations where there were individuals discharging their firearms." J. App'x at 546; *see also id.* at 1066 ("The parties agree that Defendant discharged five rounds from her firearm *in the direction of the individuals firing weapons* next to the black sedan." (emphasis added and internal quotation marks omitted)). This establishes that upon her initial approach to the shooters' location, Francemone "tried to 'temper or to limit the amount of force'" she employed to combat the threat she (and the public at large) faced. *See Edrei*, 892 F.3d at 538 (quoting *Kingsley*, 576 U.S. at 397).

6

*Finally*, the extent of the injury sustained by Tennyson supports the conclusion that Francemone's conduct was not objectively unreasonable. Although we do not mean to denigrate the seriousness of Tennyson's wound, her injury was sustained during a chaotic gunfight initiated by third parties. Even assuming that Francemone fired the shot that struck Tennyson – which, again, is a disputed fact – there can be no doubt that Tennyson and other innocent bystanders might have been killed if Francemone had not confronted the shooters as she did.

In assessing Tennyson's Fourteenth Amendment claim we are mindful that "[a] court (judge or jury) cannot apply th[e] [Fourteenth Amendment objective reasonableness] standard mechanically." *Kingsley*, 576 U.S. at 397. It instead must consider the totality of the circumstances confronted by the police officer, "including what the officer knew at the time, [without] the 20/20 vision of hindsight," as well as her duty to maintain public order. *Id*. Here, Francemone was dispatched to respond to a noise complaint, and encountered unexpected gunfire within minutes of arriving to the scene, while still awaiting backup. J. App'x at 1064. She ran towards the shooters' location just nineteen seconds after the gunfire caused a "sea of people [to] run[] in the opposite direction." *Id.* at

846–47. The undisputed record shows that she then encountered "two different shooters on either side of the black" sedan where Tennyson also stood, and that "at least three different shooters – other than Officer Francemone – [were] in the vicinity." *Id.* at 848. "Pulling these threads together," we conclude that Francemone's decision to fire five shots in the shooters' direction upon her initial approach to their location was "rationally related to a legitimate governmental objective." *Edrei*, 892 F.3d at 535, 538 (quoting *Kingsley*, 576 U.S. at 398). We therefore affirm the district court's grant of summary judgment in favor of Francemone on Tennyson's Fourteenth Amendment claim.

\* \* \*

We have considered Tennyson's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8